E-FILED
Friday, 31 January, 2014  04:45:50 PM
Clerk, U.S. District Court, ILCD

1           IN THE UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF ILLINOIS
2                  SPRINGFIELD DIVISION

3

4   LORA J. WHEATLEY,                    )
              Plaintiff,                 )
5                                        )
            -vs-                         )  NO. 11-cv-3414
6                                        )
    FACTORY CARD AND PARTY OUTLET,       )
7   a division of AMSCAN HOLDINGS,       )
    INC.,                                )
8              Defendant.                )

9

10

11                  DEPOSITION OF

12                  LORA WHEATLEY

13              SPRINGFIELD, ILLINOIS

14                  12/10/2013

15

16

17

18

19

20

21  ATKINSON-BAKER, INC.
    COURT REPORTERS
22  (800)288-3376

23  REPORTED BY:  LAUREL A. PATKES, CSR #084-001340

24  FILE NO. A70B6C5

EXHIBIT

A

```
 1          Q.      That you worked at the Super 8?

 2          A.      Yeah.

 3          Q.      So how long did you work there?

 4          A.      I didn't work there very long; maybe

 5   six months.

 6          Q.      And what was the reason for your

 7   ending that employment?

 8          A.      I just didn't really like nights,

 9   midnights, in terms of sleeping.

10          Q.      So as a result of that, you applied

11   at Factory Card and Party?

12          A.      Correct.

13          Q.      And that was 1996?

14          A.      Right.

15          Q.      Approximately what time of the year

16   do you know?  Do you recall?

17          A.      No.

18          Q.      What was the position you held there

19   at Factory Card and Party Outlet?

20          A.      I was a supervisor.

21          Q.      And just for the record, when I refer

22   to Factory Card and Party Outlet, we're referring to

23   store No. 206?

24          A.      209.
```

1          Q.        209 in Springfield, Illinois,

2     correct?

3          A.        Correct.

4          Q.        What was the nature of your duties in

5     your first role as supervisor?

6          A.        Well, we had to set up the store was

7     the first thing because, you know, it was an empty

8     building.  We had to stock the shelves, receive the

9     trucks.

10                    Then later it became you ran the

11    store when the manager wasn't there.  You were in

12    charge of cashiers, in charge of basically the whole

13    store while they were gone.  You did deposits.  You

14    did opening and closing orders.

15         Q.        Is it fair to say you basically did

16    the job of a manager with the supervision of a

17    manager?

18         A.        Correct.

19         Q.        I mean, you were doing the same kinds

20    of things?

21         A.        Yes.

22         Q.        So what position did you hold after

23    that, supervisor?

24         A.        I went to assistant manager.  I don't



### JOB DESCRIPTION

*The information in this job description has been designed to indicate the general nature of work preformed by the associate within this classification. It is not designed to contain or to be interpreted as a complete inventory of all duties, responsibilities, and qualifications required of the associate assigned to this job.*

JOB TITLE: Store Manager          FLSA: Exempt

DEPARTMENT: Store Operations

REPORTS TO: District Manager/Market Manager

DIRECTLY      Assistant Mgr Merchandising, Assistant Manager, Assistant Mgr
SUPERVISES: Operations, Card Coordinator, Head Cashier, Shift Leader, Sales
Associates.

### PRIMARY JOB FUNCTION

Responsible for the success and overall operations of a retail store. Ensures that maximum sales and profitability are achieved through the effective management of all merchandise, inventory, expense control and asset protection policies, procedures or best practices. Implements and communicates all company driven initiatives and policies and ensures complete compliance from associates. Promotes and creates an environment of dignity and respect by following our Harassment, Discrimination and Retaliation Prevention Policy (HDRPP). Delivers a consistent customer service environment by promoting and ensuring all associates practice the Customer Service Program, including the Smile Principles: Smile and Welcome Your Customer, Take Care of Your Customer's Needs and Thank Your Customer and Invite Them Back.

### MAJOR DUTIES AND RESPONSIBILITIES

- Meet and exceed all budgeted sales, margin, and Earnings before Interest, Taxes, Depreciation, Amortization, Bonus (EBITDAB) expectations of the store.
- Support and implement all Company initiatives and programs.
- Communicate and ensure execution of all customer service, productivity and operating standards set by the Company.
- Comply with all Company Policies and Procedures.
- Recruit, train, develop, and evaluate store associates so that the common goals of the Company as well as the personal development of the associate can be met.
- Mentors associates to recognize and correct performance deficiencies by following our progressive discipline policy and procedures.
- Meet and exceed inventory management goals and objectives.
- Complete any and all other duties as assigned by Supervisor.

### REQUIRED SKILLS, KNOWLEDGE, AND ABILITIES

Individual must have a strong working knowledge of retail operations and be able to work independently with limited direct supervision. Must be multi-task oriented and have strong prioritizations skills. Communication skills, both verbal and written, are necessary for the frequent interaction with customers and all position levels within the company. Strong people and interpersonal skills are needed to handle diverse customer and associate relations concerns in a professional and constructive manner. Able to coach, lead, develop and motivate store associates. Must maintain a positive attitude throughout. Must have a working knowledge of computers.

Revised 2/2009



EXHIBIT
B
tabbies®
FC-000001

# Long Term Disability Coverage

This Plan will pay a Monthly Benefit for a period of disability caused by a disease or injury. There is an elimination period. (This is the length of time during a period of disability that must pass before benefits start.)

## Test of Disability

From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be disabled on any day if:

- you are not able to perform the material duties of your own occupation solely because of: disease or injury; and
- your work earnings are 80% or less of your adjusted predisability earnings.

After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of:

- disease; or
- injury.

If your own occupation requires a professional or occupational license or certification of any kind, you will not be deemed to be disabled solely because of the loss of that license or certification.

*11201, 11519*

## Monthly Benefit

The Scheduled Monthly LTD Benefit, the Maximum Monthly Benefit, and the Minimum Monthly Benefit are shown on the Summary of Coverage.

The monthly benefit is an amount based on your monthly predisability earnings. Other income benefits, as defined later, are taken into account.

- If no other income benefits are payable for a given month:

  The monthly benefit payable under this Plan for that month will be the lesser of:

  the Scheduled Monthly LTD Benefit; and

  the Maximum Monthly Benefit.

- If other income benefits are payable for a given month:

  The monthly benefit payable under this Plan for that month will be the lesser of:

  the Scheduled Monthly LTD Benefit; and

  the Maximum Monthly Benefit;

  minus all other income benefits, but not less than the Minimum Monthly Benefit.

*7264*

GR-9                                    2


EXHIBIT

C

## When Benefits Are Payable
Monthly benefits will be payable if a period of disability:

- starts while you are covered; and
- continues during and past the elimination period.

These benefits are payable after the elimination period ends for as long as the period of disability continues.

7265

## A Period of Disability
A period of disability starts on the first day you are disabled as a direct result of a significant change in your physical or mental condition occurring while you are insured under this Plan. You must be under the regular care of a physician. (You will not be deemed to be under the regular care of a physician more than 31 days before the date he or she has seen and treated you in person for the disease or injury that caused the disability.)

Your period of disability ends on the first to occur of:

- The date Aetna finds you are no longer disabled or the date you fail to furnish proof that you are disabled.
- The date Aetna finds that you have withheld information which indicates you are performing, or are capable of performing, the duties of a reasonable occupation.
- The date you refuse to be examined by, or cooperate with, an independent physician or a licensed or certified health care practitioner, as requested.
- The date you cease to be under the regular care of a physician.
- The date an independent medical exam report or functional capacity evaluation fails to confirm your disability.
- The date you reach the end of your Maximum Benefit Duration.
- The date you are not undergoing effective treatment for alcoholism or drug abuse, if your disability is caused to any extent by alcoholism or drug abuse.
- The date you refuse to cooperate with or accept:

  changes made to a work site or job process to suit your identified medical limitations; or

  adaptive equipment or devices designed to suit your identified medical limitations;

  which would enable you to perform your own occupation or a reasonable occupation (if you are receiving benefits for being unable to work any reasonable occupation) and provided that a physician agrees that such changes or adaptive equipment suit your medical limitations.

- The date you refuse to receive treatment recommended by your attending physician that in Aetna's opinion would: cure; correct; or limit your disability.
- The date your condition would permit you to work, or increase the number of hours you work, or the number or type of duties you perform in your own occupation, but you refuse to do so.
- The date of your death.
- The day after Aetna determines you are able to participate in an Approved Rehabilitation Program and you refuse to do so.

7263, 7680, 11205-2

A period of disability will end after 24 monthly benefits are payable if it is determined that the disability is primarily caused by:

- a Mental Health or Psychiatric condition, including physical manifestations of these conditions, but excluding those conditions with demonstrable, structural brain damage; or
- Alcohol and/or Drug Abuse.

GR-9                                        3

## When Benefits Are Payable
Monthly benefits will be payable if a period of disability:

- starts while you are covered; and
- continues during and past the elimination period.

These benefits are payable after the elimination period ends for as long as the period of disability continues.

7265

## A Period of Disability
A period of disability starts on the first day you are disabled as a direct result of a significant change in your physical or mental condition occurring while you are insured under this Plan. You must be under the regular care of a physician. (You will not be deemed to be under the regular care of a physician more than 31 days before the date he or she has seen and treated you in person for the disease or injury that caused the disability.)

Your period of disability ends on the first to occur of:

- The date Aetna finds you are no longer disabled or the date you fail to furnish proof that you are disabled.
- The date Aetna finds that you have withheld information which indicates you are performing, or are capable of performing, the duties of a reasonable occupation.
- The date you refuse to be examined by, or cooperate with, an independent physician or a licensed or certified health care practitioner, as requested.
- The date you cease to be under the regular care of a physician.
- The date an independent medical exam report or functional capacity evaluation fails to confirm your disability.
- The date you reach the end of your Maximum Benefit Duration.
- The date you are not undergoing effective treatment for alcoholism or drug abuse, if your disability is caused to any extent by alcoholism or drug abuse.
- The date you refuse to cooperate with or accept:

  changes made to a work site or job process to suit your identified medical limitations; or

  adaptive equipment or devices designed to suit your identified medical limitations;

  which would enable you to perform your own occupation or a reasonable occupation (if you are receiving benefits for being unable to work any reasonable occupation) and provided that a physician agrees that such changes or adaptive equipment suit your medical limitations.

- The date you refuse to receive treatment recommended by your attending physician that in Aetna's opinion would: cure; correct; or limit your disability.
- The date your condition would permit you to work, or increase the number of hours you work, or the number or type of duties you perform in your own occupation, but you refuse to do so.
- The date of your death.
- The day after Aetna determines you are able to participate in an Approved Rehabilitation Program and you refuse to do so.

7263, 7680, 11205-2

A period of disability will end after 24 monthly benefits are payable if it is determined that the disability is primarily caused by:

- a Mental Health or Psychiatric condition, including physical manifestations of these conditions, but excluding those conditions with demonstrable, structural brain damage; or
- Alcohol and/or Drug Abuse.

GR-9                                             3

There are two exceptions which apply if you are confined as an inpatient in a hospital or treatment facility for treatment of that condition at the end of such 24 months.

- If the inpatient confinement lasts less than 30 days, the period of disability will cease when you are no longer confined.
- If the inpatient confinement lasts 30 days or more, the period of disability may continue until 90 days after the date you have not been so continuously confined.

The Separate Periods of Disability section does not apply beyond 24 months to periods of disability which are subject to the above paragraph.

*11521*

## How Separate Periods of Disability Are Treated

Once a period of disability has ended, any new period of disability will be treated separately.

However, 2 or more separate periods of disability due to the same or related causes will be deemed to be one period of disability and only one elimination period will apply if:

the separation occurs during the elimination period and the periods are separated by less than 15 days in a row of work.

the separation occurs after the elimination period and the periods are separated by less than 6 months in a row of work.

The first period will not be included if it began while you were not covered under this LTD Plan.

If you become eligible for coverage under any other group long term disability benefits plan carried or sponsored by your Employer, this Separate Periods of Disability section will cease to apply to you.

*7684, 7537-1*

## Other Income Benefits

They are:

*7537*

- 50% of any award provided under The Jones Act or The Maritime Doctrine of Maintenance, Wages and Cure.

*7537, 7537-2*

- Disability, retirement, or unemployment benefits required or provided for under any law of a government. Examples are:

Unemployment compensation benefits.

Temporary or permanent, partial or total disability benefits under any state or federal workers' compensation law or any other like law, which are meant to compensate the worker for any one or more of the following: loss of past and future wages; impaired earning capacity; lessened ability to compete in the open labor market; any degree of permanent impairment; and any degree of loss of bodily function or capacity.

Automobile no-fault wage replacement benefits to the extent required by law.

Benefits under the Federal Social Security Act, the Railroad Retirement Act, the Canada Pension Plan, and the Quebec Pension Plan.

Veterans' benefits.

*7537, 7537-2*

- Statutory disability benefits.

*7537, 7537-2*

GR-9

4

- Disability or unemployment benefits under any plan or arrangement of coverage:

   as a result of employment by or association with the Employer; or

   as a result of membership in or association with any group, association, union or other organization.

   This includes both, plans that are insured and those that are not.

*7537, 7537-2*

→ Unreduced retirement benefits for which you are or may become eligible under a group pension plan at the later of:

   age 62, and

   the Plan's Normal Retirement Age,

   but only to the extent that such benefits were paid for by an employer.

*7607*

- Voluntarily elected retirement benefits received under any group pension plan; but only to the extent that such benefits were paid for by an employer.

*7607*

- Disability payments which result from the act or omission of any person whose action caused your disability. These payments may be from insurance or other sources.

*7537*

- Disability benefits under any group mortgage or group credit disability plan.

*7537*

Other income benefits include those, due to your disability or retirement, which are payable to: you; your spouse; your children; your dependents.

*7537*

### Effect of Increases In Other Income Benefits On Monthly Benefits

Increases in the level of other income benefits due to the following will be considered "other income benefits":

- a change in the number of your family members;
- a recomputation or recalculation to correct or adjust your benefit level as first established for the period of disability; or
- a change in the severity of your disability.

There may be cost of living increases in the level of other income benefits received from a governmental source during a period of disability. These increases will not be deemed to be "other income benefits."

There may be cost of living or general increases in the level of other income benefits from a non-governmental source during a period of disability. These increases will not be considered other income benefits to the extent they are based on the annual average increase in the Consumer Price Index.

*7539, 7539-1*

GR-9                                                                                                5

### Other Income Benefits Which Do Not Reduce Monthly Benefits

The amount of any retirement or disability benefits you were receiving from the following sources before the date you become disabled under this LTD Plan will not reduce your monthly benefits:

- military and other government service pensions;
- retirement benefits from a prior employer;
- veterans' benefits for service related disabilities;
- individual disability income policies; and
- Federal Social Security Act.

Also, the amount of any income or other benefits you receive from the following sources will not reduce your monthly benefits:

- profit sharing plans;
- thrift plans;
- 401(k) plans;
- Keogh plans;
- employee stock option plans;
- tax sheltered annuity plans;
- severance pay;
- individual disability income policies; or
- individual retirement accounts (IRAs).

*7539, 7539-1*

Aetna will determine other income benefits as follows:

### Lump Sum and Periodic Payments From Any Other Income Benefits

Any lump sum or periodic other income payments that you receive will be prorated on a monthly basis over the period of time for which the payment was made. If a period of time is not indicated, Aetna will prorate the payments over a reasonable period of time, taking into account the expected length of disability benefits and other relevant factors.

That part of the lump sum or periodic payment that is for disability will be counted, even if it is not specifically apportioned or identified as such. If there is no proof acceptable to Aetna as to what that part reasonably is, 50% will be deemed to be for disability.

Any of these "Other Income Payments" that date back to a prior date may be allocated on a retroactive basis.

### Estimated Payments

The amount of other income benefits for which you appear to be eligible will be estimated, unless you have signed and returned a reimbursement agreement to Aetna. This agreement contains your promise to repay Aetna for any overpayment of benefits made to you.

If other income benefits are estimated, your monthly benefit will be adjusted when we receive proof:

- of the exact amount awarded; or
- that benefits have been denied after review at the highest administrative level.

Aetna will pay you if any underpayment in your monthly benefit results. You will have to repay Aetna if any overpayment results. When Aetna has to take legal action against you to recover any overpayment, you will also have to pay Aetna's reasonable attorney's fees and court costs, if Aetna prevails.

*7538, 11206*

## Required Proof of Income

Aetna has the right to require proof that:

- you, your spouse, child, or dependent has made application for all other income benefits which you or they are, or may be, eligible to receive relative to your disability and has made a timely appeal of any denial through the highest administrative level; timely appeal means making such an appeal as required, but in no case later than 60 days from the latest denial;
- the person has furnished proof needed to obtain other income benefits, which includes, but is not limited to, Workers' Compensation Benefits;
- the person has not waived any other income benefits without Aetna's written consent; and
- the person has sent copies of the documents to Aetna showing the effective dates and the amounts of other income benefits.

In addition to the above, for purposes of Federal Social Security, when a timely application for benefits has been made and denied, a request for reconsideration must be made within 60 days after the denial, unless Aetna states, in writing, that it does not require you to do so. Also, if the reconsideration is denied, an application for a hearing before an Administrative Law Judge must be made within 60 days of that denial unless Aetna relieves you of that obligation.

Aetna also requires proof of income you receive from any occupation for compensation or profit.

You do not have to apply for:

- retirement benefits paid only on a reduced basis; or
- disability benefits under group life insurance if they would reduce the amount of group life insurance;

but, if you do apply for and receive these benefits, they will be deemed to be other income benefits for which proof is required.

If you do not furnish proof of other income benefits, Aetna reserves the right to suspend or adjust benefits by the estimated amount of such other income benefits.

*7686; 7543-1*

## Approved Rehabilitation Program

Aetna retains the right to evaluate you for participation in an Approved Rehabilitation Program.

If, in Aetna's judgment, you are able to participate, Aetna may, in its sole discretion require you to participate in an Approved Rehabilitation Program.

This Plan will pay for all services and supplies, approved in advance by Aetna, needed in connection with such participation; except for those for which you can otherwise receive reimbursement from any third party payor, including any governmental benefits to which you may be entitled.

During your active participation in an Aetna Approved Rehabilitation Program, Aetna will pay you an additional 10% of your monthly benefit after all applicable reductions for other income benefits. Not more than a maximum of $ 500 monthly, for a one time maximum of 6 consecutive months for each period of disability will be paid.

*7540; 7687, 7540-1*

## Exclusions

Long Term Disability Coverage does not cover any disability that:

- is due to intentionally self-inflicted injury (while sane or insane).
- results from your commission of, or attempting to commit, a criminal act.
- results from driving an automobile while intoxicated. ("Intoxicated" means: the blood alcohol level of the driver of the automobile meets or exceeds the level at which intoxication would be presumed under state law.)
- is due to war or any act of war (declared or not declared).
- is due to: insurrection; rebellion; or taking part in a riot or civil commotion.

On any day during a period of disability that a person is confined in a penal or correctional institution for conviction of a criminal or other public offense:

- the person will not be deemed to be disabled; and
- no benefits will be payable.

*7541, 7541-1*

### Pre-existing Conditions

No benefit is payable for any disability that is caused by a "pre-existing condition" and starts before the end of the first 12 months following your effective date of coverage.

A disease or injury is a pre-existing condition if, during the 3 months before your effective date of coverage:

- it was diagnosed or treated; or
- services were received for the diagnosis or treatment of the disease or injury; or
- you took drugs or medicines prescribed or recommended by a physician for that condition.

*7541-2*

# General Information About Your Coverage

(including information about Termination of Coverage and the Effect of Prior Coverage)

### Termination of Coverage

Coverage under this Plan terminates at the first to occur of:

- When employment ceases.
- When the group contract terminates as to the coverage.
- When you are no longer in an Eligible Class. (This may apply to all or part of your coverage.)
- When you fail to make any required contribution.

Ceasing active work will be deemed to be cessation of employment. If you are not at work due to one of the following, employment may be deemed to continue up to the limits shown below.

If you are not at work due to disease or injury, your employment may be continued until stopped by your Employer, but not beyond 12 months from the start of the absence.

If you are not at work due to temporary lay-off or leave of absence, your employment will be deemed to cease at the end of the month following the month of your last full day of active work before the start of the lay-off or leave of absence.

In figuring when employment will stop for the purposes of termination of any coverage, Aetna will rely upon your Employer to notify Aetna. This can be done by telling Aetna or by stopping premium payments. Your employment may be deemed to continue beyond any limits shown above if Aetna and your Employer so agree in writing.

### Benefits May Continue After Termination

If your coverage ceases during a period of disability which began while you had coverage, benefits will be available as long as your period of disability continues.

6080

### Reinstatement of Coverage

If your coverage terminates, you may again become covered in accordance with the terms of this Plan; except that if:

you return to active work within 24 months of the date coverage terminated;

any limitation as to a pre-existing condition will apply only to the extent it would have applied if your coverage had not terminated. Also, any period of continuous service required before your Eligibility Date will apply only to the extent it would have applied if coverage had not terminated.

7690

### How "Prior Coverage" Affects Coverage Under This Plan

If the coverage of any person under this Plan replaces any prior coverage of the person, the following will apply.

"Prior coverage" is any plan of group long term disability coverage that has been replaced by coverage under part or all of this Plan. It must have been sponsored by your Employer who is participating in this Plan. The replacement can be complete or in part for the Eligible Class to which you belong. Any such plan is prior coverage if provided by another group insurance plan.

A person's coverage under this Plan replaces and supersedes any prior coverage. It will be in exchange for everything under such prior coverage except coverage will not be available as to a particular period of disability for which a benefit is available or would be available under the prior coverage in the absence of coverage under this Plan.

As stated earlier, this Plan has a Limitation as to a disability caused by a pre-existing condition.

However, if:

- you had prior coverage on the day before Long Term Disability Coverage took effect; and
- you became covered for this LTD Plan on the date it takes effect;

such Limitation applies only until a continuous period of coverage under the prior coverage and this LTD Plan are equal to the lesser of:

- 12 months; and
- any period of limitation as to a pre-existing condition remaining under the prior coverage.

Where the Limitation no longer applies, the amount of monthly benefit and the maximum period for which benefits will be payable, as to a period of disability caused by such pre-existing condition, will be as provided in this LTD Plan.

In no event will:

- A benefit be payable as to a period of disability caused by a pre-existing condition, if the disability is excluded by any other terms of this LTD Plan.
- A condition be considered to be a pre-existing condition under this LTD Plan if it was not a pre-existing condition under the prior coverage.

*6051*

### Survivor Benefit

If you die while disabled, a single, lump sum benefit will be paid under this provision if:

- there is an Eligible Survivor as defined below; and
- a Monthly Benefit was payable under this Plan.

The benefit amount will be:

- 6 times the Monthly Benefit, not reduced by other income benefits, for which you were eligible in the full month just before the month in which you die.

If you die before you are eligible for one full Monthly Benefit, however, the benefit will be:

- 6 times the Monthly Benefit, not reduced by other income benefits for which you would have been eligible if you had not died, for the first full month after the month in which you die.

An Eligible Survivor is:

- Your legally married spouse at the date of your death.
- If there is no such spouse, your biological or legally adopted child who, when you die:

  is not married; and

  is depending mainly on you for support; and

  is under age 25. This age limit will not apply if the child is not capable of self-sustaining employment because of mental or physical handicap which existed prior to age 25.

### How the Survivor Benefit Will Be Paid

The benefit will be paid as soon as the necessary written proof of your death and disability status is received.

The benefit will be paid to your eligible surviving spouse, if any. Otherwise, it will be paid in equal shares to your eligible surviving children.

If Monthly Benefit payments are made in amounts greater than the Monthly Benefits that you are entitled to receive, Aetna has the right to first apply the survivor benefit to any such overpayment.

Aetna may pay the benefit to anyone who, in Aetna's opinion, is caring for and supporting the eligible survivor; or, if proper claim is made, Aetna may pay the benefit to an eligible survivor's legally appointed guardian or committee.

7494, 7494-2

### Assignment of Insurance

Coverage may be assigned only with the consent of Aetna.

7542

### How and When To Report Your Claim

You are required to submit a claim to Aetna by following the procedure chosen by your Employer. If the procedure requires that claim forms be submitted, they may be obtained at your place of employment or from Aetna. Your claim must give proof of the nature and extent of the loss. Aetna may require copies of documents to support your claim, including data about any other income benefits. You must also provide Aetna with authorizations to allow it to investigate your claim and your eligibility for and the amount of other income benefits.

You must furnish such true and correct information as Aetna may reasonably request.

The deadline for filing a claim for benefits is 90 days after the end of the elimination period. If, through no fault of your own, you are not able to meet the deadline for filing a claim, your claim will be accepted if you file as soon as possible; but not later than 1 year after the deadline unless you are legally incapacitated. Otherwise, late claims will not be covered.

7685

### How Benefits Will Be Paid

Benefits will be paid to you at the end of each calendar month during the period for which benefits are payable. Benefits for a period less than a month will be prorated. This will be done on the basis of the ratio, to 30 days, of the days of eligibility for benefits during the month.

Any unpaid balance at the end of Aetna's liability will be paid within 30 days of receipt by Aetna of the due written proof.

Aetna may pay up to $ 1,000 of any benefit to any of your relatives whom it believes fairly entitled to it. This can be done if the benefit is payable to you and you are a minor or not able to give a valid release. It can also be done if a benefit is payable to your estate.

7543

### Examinations and Evaluations

Aetna will have the right and opportunity to examine and evaluate any person who is the basis of any claim at all reasonable times while that claim is pending or payable. This will be done at Aetna's expense.

7543

### Legal Action

No legal action can be brought to recover under any benefit after 3 years from the deadline for filing claims.

Aetna will not try to reduce or deny a benefit payment on the grounds that a condition existed before a person's coverage went into effect, if the loss occurs more than 2 years from the date coverage commenced. This will not apply to conditions excluded from coverage on the date of the loss.

7543

### Recovery of Benefits Paid (Subrogation)

As a condition to paying or providing any disability benefits under this Plan, the Plan shall be subrogated to (has the right to pursue) all rights of recovery you have against any third party with respect to such disability, to the extent of benefits provided. The term "third party" includes any party possibly responsible for your injuries or illnesses, or your no-fault automobile insurance coverage.

The following terms and provisions shall apply with regard to the Plan's right of recovery:

- you shall not prejudice the Plan's subrogation rights in any way;
- you shall cooperate fully with the Plan's efforts to recover its benefits paid;
- you shall notify Aetna within 45 days of the date when any notice is given to any other party (including an attorney) of any intention to pursue or investigate a claim to recover damages due to: injuries; or illnesses; that you sustained;
- the Plan's subrogation rights are a first priority claim against all potential liable parties and are to be paid before any other claim for your damages. This applies even if the remainder of the payments from such third party is insufficient to make you whole or compensate you: in part; or in whole for the damages that you sustained.

This provision will apply regardless of whether:

- liability for payment is admitted by the third party; or
- the settlement or judgment you receive identifies the specific benefits this Plan provided.

### Recovery of Overpayments

If payments are made in amounts greater than the benefits that you are entitled to receive, Aetna has the right to do any one or all of the following:

- to require you to return the overpayment on request;
- to stop payment of benefits until the overpayment is recovered;
- to take any legal action needed to recover the overpayment; and
- to place a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any other income, whether on a periodic or lump sum basis.

If the overpayment:

- occurs as a result of your receipt of other income benefits for the same period for which you have received a benefit under this Plan; and
- to obtain such other income benefits, advocate or legal fees were incurred;

Aetna will exclude from the amount to be recovered, such advocate or legal fees; provided you return the overpayment to Aetna within 30 days of Aetna's written request for the overpayment. If you do not return the overpayment to Aetna within such 30 days, such fees will not be excluded; you will remain liable for repayment of the total overpaid amount.

Examples of other income referred to in the preceding paragraph are:

- Workers' compensation.
- Federal Social Security benefits.
- Disability payments which result from the act or omission of any person whose action caused your disability.

*11211; 7543*

### Contract Not a Substitute for Workers' Compensation Insurance
The group contract is not in lieu of and does not affect workers' compensation benefits. However, any workers' compensation benefits are considered other income benefits.

*7693*

### General Provisions
The following additional provisions apply to your coverage.

You cannot receive multiple coverage under this Plan because you are connected with more than one Employer.

In the event of a misstatement of any fact affecting your coverage under this Plan, the true facts will be used to determine the coverage in force.

This document describes the main features of this Plan. Additional provisions are described elsewhere in the group contract. If you have any questions about the terms of this Plan or about the proper payment of benefits, you may obtain more information from your Employer or, if you prefer, from the Home Office of Aetna. Your Employer hopes to continue this Plan indefinitely but, as with all group plans, this Plan may be changed or discontinued with respect to all or any class of employees.

*6490*

# Glossary

The following definitions of certain words and phrases will help you understand the benefits to which the definitions apply. Some definitions which apply only to a specific benefit appear in the benefit section. If a definition appears in a benefit section and also appears in the Glossary, the definition in the benefit section will apply in lieu of the definition in the Glossary.

### Adjusted Predisability Earnings
This is your predisability earnings plus any increase made on each January 1, starting on the January 1 following 12 months of a period of disability. The increase on each such January 1 will be by the percentage increase in the Consumer Price Index, rounded to the nearest tenth; but not by more than 10%.

### Approved Rehabilitation Program
This is a written program approved by Aetna which provides for services and supplies that are intended to enable you to return to work. This program may include, but is not limited to:

- vocational testing;
- vocational training;
- alternative treatment plans such as:

  support groups;
  physical therapy;
  occupational therapy;
  speech therapy;

- workplace modification to the extent not otherwise provided;
- part time employment; and
- job placement.

A rehabilitation program will cease to be An Approved Rehabilitation Program on the date Aetna withdraws, in writing, its approval of the program.

### Consumer Price Index
The CPI-W, Consumer Price Index for Urban Wage Earners and Clerical Workers is published by the United States Department of Labor. If the CPI-W is discontinued or changed, Aetna reserves the right to use a comparable index.

### Effective Treatment of Alcoholism or Drug Abuse
This means a program of alcoholism or drug abuse therapy that is prescribed and supervised by a physician and either:

- has a follow-up therapy program directed by a physician on at least a monthly basis; or
- includes meetings at least twice a month with organizations devoted to the treatment of alcoholism or drug abuse.

These are not effective treatment:

- Detoxification. This means solely treating the aftereffects of a specific episode of alcoholism or drug abuse.
- Maintenance care. This means primarily providing an environment free of alcohol or drugs.

### Hospital
This is an institution that:

- mainly provides, on an inpatient basis, diagnostic and therapeutic facilities for surgical and medical diagnosis, treatment, and care of injured and sick persons; and
- is supervised by a staff of physicians; and
- provides 24 hour a day registered nursing (RN) service; and
- is not mainly a place for rest, for the aged, for drug addicts, for alcoholics, or a nursing home.

An institution which does not provide complete surgical services, but which meets all the other tests listed above, will also be deemed a hospital if:

- it provides services chiefly to patients all of whom have conditions related either by a medical specialty field or a specific disease category; and
- while confined, the patient is under regular therapeutic treatment by a physician for the injury or disease.

### Injury
An accidental bodily injury.

### Material Duties
These are duties that:

- are normally required for the performance of your own occupation; and
- cannot be reasonably omitted or modified. However, to be at work in excess of 40 hours per week is not a material duty.

### Own Occupation
This is the occupation that you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed:

- for your specific employer; or
- at your location or work site; and

without regard to your specific reporting relationship.

### Physician
"Physician" means a person who is a legally qualified physician. Also, to the extent required by law, a practitioner who performs a service for which coverage is provided when it is performed by a physician.

Regular care of a physician means you are attended by a physician:

- who is not you or related to you;
- who is practicing within the scope of his or her license;
- who has the medical training and clinical expertise suitable to treat your disabling condition;
- who specializes in psychiatry, if your disability is caused, to any extent, by a mental health or psychiatric condition; and
- whose treatment is:

  consistent with the diagnosis of the disabling condition; and
  according to guidelines established by medical, research and rehabilitative organizations; and
  administered as often as needed.

GR-9                                        15

### Predisability Earnings

This is the amount of salary or wages you were receiving from an employer participating in this Plan on the day before a period of disability started, calculated on a monthly basis.

It will be figured from the rule below that applies to you.

If you are paid on an annual contract basis, your monthly salary is 1/12th of your annual contract salary.

If you are paid on an hourly basis, the calculation of your monthly wages is based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month; but not more than 173 hours per month.

If you do not have regular work hours, the calculation of your monthly salary or wages is based on the average number of hours you worked per month during the last 12 calendar months (or during your period of employment if fewer than 12 months); but not more that 173 hours per month.

Included in salary or wages are:

- Commissions averaged over the last 12 months of actual employment or such shorter period if actual employment was for fewer than 12 months.
- Contributions you make through a salary reduction agreement with your Employer to any of the following:

   An Internal Revenue Code (IRC) Section 125 plan for your fringe benefits.

   An IRC 401(k), 403(b), or 457 deferred compensation arrangement.

   An executive nonqualified deferred compensation agreement.

Not included in salary or wages are:

- Awards and bonuses.
- Overtime pay.
- Contributions made by your Employer to any deferred compensation arrangement or pension plan.

A retroactive change in your rate of earnings will not result in a retroactive change in coverage.

### Reasonable Occupation

This is any gainful activity for which you are; or may reasonably become; fitted by: education; training; or experience; and which results in; or can be expected to result in; an income of more than 60% of your adjusted predisability earnings.

### Treatment Facility

This is an institution (or distinct part thereof) that is for the treatment of alcoholism or drug abuse and which meets fully every one of the following tests:

- It is primarily engaged in providing on a full-time inpatient basis, a program for diagnosis, evaluation, and treatment of alcoholism or drug abuse.
- It provides all medical detoxification services on the premises, 24 hours a day.
- It provides all normal infirmary-level medical services required during the treatment period, whether or not related to the alcoholism or drug abuse, on a 24 hour daily basis. Also, it provides, or has an agreement with a hospital in the area to provide, any other medical services that may be required during the treatment period.
- On a continuous 24 hour daily basis, it is under the supervision of a staff of physicians, and provides skilled nursing services by licensed nursing personnel under the direction of a full-time registered graduate nurse.
- It prepares and maintains a written individual plan of treatment for each patient based on a diagnostic assessment of the patient's medical, psychological and social needs with documentation that the plan is under the supervision of a physician.
- It meets any applicable licensing standards established by the jurisdiction in which it is located.

Confidentiality Notice

Aetna considers personal information to be confidential and has policies and procedures in place to protect it against unlawful use and disclosure. By "personal information," we mean information that relates to a member's physical or mental health or condition, the provision of health care to the member, or payment for the provision of health care or disability or life benefits to the member. Personal information does not include publicly available information or information that is available or reported in a summarized or aggregate fashion but does not identify the member.

When necessary or appropriate for your care or treatment, the operation of our health, disability or life insurance plans, or other related activities, we use personal information internally, share it with our affiliates, and disclose it to health care providers (doctors, dentists, pharmacies, hospitals and other caregivers), payors (health care provider organizations, employers who sponsor self-funded health plans or who share responsibility for the payment of benefits, and others who may be financially responsible for payment for the services or benefits you receive under your plan), other insurers, third party administrators, vendors, consultants, government authorities, and their respective agents. These parties are required to keep personal information confidential as provided by applicable law.

Some of the ways in which personal information is used include claim payment; utilization review and management; coordination of care and benefits; preventive health, early detection, vocational rehabilitation and disease and case management; quality assessment and improvement activities; auditing and anti-fraud activities; performance measurement and outcomes assessment; health, disability and life claims analysis and reporting; health services, disability and life research; data and information systems management; compliance with legal and regulatory requirements; formulary management; litigation proceedings; transfer of policies or contracts to and from other insurers, HMOs and third party administrators; underwriting activities; and due diligence activities in connection with the purchase or sale of some or all of our business. We consider these activities key for the operation of our health, disability and life plans. To the extent permitted by law, we use and disclose personal information as provided above without member consent. However, we recognize that many members do not want to receive unsolicited marketing materials unrelated to their health, disability and life benefits. We do not disclose personal information for these marketing purposes unless the member consents. We also have policies addressing circumstances in which members are unable to give consent.

To obtain a copy of our Notice of Information Practices, which describes in greater detail our practices concerning use and disclosure of personal information, please call 1-866-825-6944 or visit our Internet site at www.aetna.com.

**Continuation of Coverage During an Approved Leave of Absence Granted to Comply With Federal Law**
This continuation of coverage section applies only for the period of any approved family or medical leave (approved FMLA leave) required by Family and Medical Leave Act of 1993 (FMLA). If your Employer grants you an approved FMLA leave for a period in excess of the period required by FMLA, any continuation of coverage during that excess period will be subject to prior written agreement between Aetna and your Employer.

If your Employer grants you an approved FMLA leave in accordance with FMLA, your Employer may allow you to continue coverage for which you are covered under the group contract on the day before the approved FMLA leave starts.

At the time you request the leave, you must agree to make any contributions required by your Employer to continue coverage. Your Employer must continue to make premium payments.

Coverage will not be continued beyond the first to occur of:

- The date you are required to make any contribution and you fail to do so.
- The date your Employer determines your approved FMLA leave is terminated.
- The date the coverage involved discontinues as to your eligible class.

If you return to work for your Employer following the date your Employer determines the approved FMLA leave is terminated, your coverage under the group contract will be in force as though you had continued in active employment rather than going on an approved FMLA leave provided you make request for such coverage within 31 days of the date your Employer determines the approved FMLA leave to be terminated. If you do not make such request within 31 days, coverage will again be effective under the group contract only if and when Aetna gives its written consent.

## Claim Procedures

Your booklet-certificate contains information on reporting claims. Claim forms may be obtained at your place of employment. These forms tell you how and when to file a claim.

Note: If applicable state law requires the Plan to take action on a claim or appeal within a shorter timeframe, the shorter period will apply.

## Filing Disability Claims under the Plan

You may file claims for Plan benefits, and appeal adverse claim decisions, either yourself or through an authorized representative.

An "authorized representative" means a person you authorize, in writing, to act on your behalf. The Plan will also recognize a court order giving a person authority to submit claims on your behalf.

You will be notified of an adverse benefit determination not later than 45 days after receipt of the claim. This time period may be extended up to an additional 30 days due to circumstances outside the Plan's control. In that case, you will be notified of the extension before the end of the initial 45 day period. If a decision cannot be made within this 30 day extension period due to circumstances outside the Plan's control, the time period may be extended up to an additional 30 days, in which case you will be notified before the end of the first 30 day extension period. The notice of extension will explain the standards on which entitlement to a benefit are based, the unresolved issues that prevent a decision, and the additional information needed to resolve those issues. You will be given at least 45 days after receiving the notice to furnish that information.

## Filing of an Appeal of an Adverse Benefit Determination for a Disability Claim

You will have 180 days following receipt of an adverse benefit decision to appeal the decision. You will ordinarily be notified of the decision not later than 45 days after the appeal is received. If special circumstances require an extension of time of up to an additional 45 days, you will be notified of such extension during the 45 days following receipt of your request. The notice will indicate the special circumstances requiring an extension and the date by which a decision is expected.

You may submit written comments, documents, records, and other information relating to your claim, whether or not the comments, documents, records, or information were submitted in connection with the initial claim. You may also request that the Plan provide you, free of charge, copies of all documents, records, and other information relevant to the claim.

 **Aetna™** | Aetna Life Insurance Company | Melissa Ulbricht
PO Box 14552 | Disability Claim Analyst
Lexington, KY 40512-4552 | 866-282-8495

** Maintain a copy for your records **

August 8, 2009

Lora Wheatley
608 Water Tower Road
Murrayville, IL 62668

RE: Long Term Disability

Group Control No: 809828
Employer:     Factory Card & Party Outlet
Employee:     Lora Wheatley

Dear Lora Wheatley:

To be eligible for monthly disability benefits you must be unable to perform the
material duties of your own occupation solely due to injury or illness. We have
reviewed your application for long term disability benefits and have determined
that, according to your plan, you are now totally disabled from your own
occupation. You are eligible to receive monthly benefits effective July 07, 2009,
and continuing for up to 24 months as long as you remain disabled from your
own occupation.

<u>Criteria for Continuation of Benefits</u>

Aetna has determined that you presently meet the "own occupation" definition of
disability. Your plan requires that we periodically re-evaluate your eligibility by
requesting updated medical information from your physician or an independent
physician of our choice. Also, you may be contacted by Aetna Vocational
Rehabilitation Consultant and asked to participate in a vocational assessment
interview. If we determine that you are capable of performing the material duties
of your own occupation, your monthly benefits will cease.

If you are still disabled from your own occupation and eligible for disability
benefits on July 07, 2011, your plan requires that you meet a more strict '"any
occupation"' definition of disability. To qualify for monthly benefits, you must
provide objective medical evidence that you are unable to perform any
reasonable occupation for which you are qualified or could become qualified as a
result of your education, training or experience. If you do qualify for continuation
of benefits, we will periodically review your eligibility by requesting updated
medical information from your medical providers, independent physicians of our
choice, or vocational specialists.

While you are eligible and are receiving benefits, you may be contacted by an
Aetna representative regarding our rehabilitation program or our Social Security


EXHIBIT
D

August 8, 2009
Lora Wheatley

Advocacy Attorney Referral Assistance Program.  The assistance program is
voluntary and is of no cost to you.  As these services may be highly beneficial,
we encourage you to participate when requested.

If we determine that a Social Security Disability Benefit Application is required,
we have arranged with ALLSUP Incorporated, a Social Security advocacy firm, to
call and assist you with your Social Security application.  These services will be
provided at no cost.

In accordance with contractual provisions, your maximum period of benefit
entitlement will end at the end of the month you turn age 67 based on the Social
Security National Retirement Age.  Your final monthly benefit eligibility date is
April 30, 2031.

## Computation of Monthly Benefit

LTD benefits supplement certain other income described in the enclosed Notice
Concerning Benefits.  The total amount from all applicable sources will not be
less than 60.00% of your Monthly Rate of Basic Earnings (MRBE) of $3,504.16,
at the time your disability began.  Your monthly benefit is described below:

| July 07, 2009 - July 31, 2009 | |
|---|---|
| Gross Benefit Amount | $1,752.08 |
| Minus STD/TDI | -$1,051.25 |
| Net Benefit Amount | $700.83 |
| Minus FICA | -$53.61 |
| Net Payment Amount | $647.22 |
| | |
| August 01, 2009 - October 31, 2009 | |
| Gross Benefit Amount | $2,102.50 |
| Minus Other Income | -$0.00 |
| Net Benefit Amount | $2,102.50 |
| Minus FICA | -$160.84 |
| Net Payment Amount | $1,941.66 |
| | |
| November 01, 2009 - April 30, 2031 | |
| Gross Benefit Amount | $2,102.50 |
| Minus Other Income | -$0.00 |
| Net Benefit Amount | $2,102.50 |

August 8, 2009
Lora Wheatley

Social Security (FICA) withholding is required during the first six full months of disability. FICA withholding will cease if you continue to remain totally disabled beyond six full calendar months.

Under the terms of your plan there is a minimum monthly benefit of $210.25.

Please carefully read the instructions on the enclosed Notice Concerning Benefits. Failure to comply with each applicable provision may jeopardize your future eligibility.

Your initial benefit payment has been issued for the period July 7, 2009 through July 31, 2009 in the amount of $647.22. This will be sent under separate cover. All future benefits are due at the end of each month as indicated above.

If you have any questions, please call 866-282-8495.

Sincerely,


Melissa Ulbricht
Aetna Life Insurance Company

CC: Factory Card & Party Outlet

1              IN THE UNITED STATES DISTRICT COURT
       FOR THE CENTRAL DISTRICT OF ILLINOIS
2                 SPRINGFIELD DIVISION

3

4    LORA J. WHEATLEY,                    )
                  Plaintiff,             )
5                                         )
            -vs-                          )  NO. 11-cv-3414
6                                         )
     FACTORY CARD AND PARTY OUTLET,       )
7    a division of AMSCAN HOLDINGS,       )
     INC.,                                )
8                 Defendant.              )

9

10

11                  DEPOSITION OF

12                  LORA WHEATLEY

13               SPRINGFIELD, ILLINOIS

14                    12/10/2013

15

16

17

18

19

20

21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800)288-3376

23   REPORTED BY:  LAUREL A. PATKES, CSR #084-001340

24   FILE NO. A70B6C5

EXHIBIT
E

```
 1           Q.      That you worked at the Super 8?

 2           A.      Yeah.

 3           Q.      So how long did you work there?

 4           A.      I didn't work there very long; maybe

 5    six months.

 6           Q.      And what was the reason for your

 7    ending that employment?

 8           A.      I just didn't really like nights,

 9    midnights, in terms of sleeping.

10           Q.      So as a result of that, you applied

11    at Factory Card and Party?

12           A.      Correct.

13           Q.      And that was 1996?

14           A.      Right.

15           Q.      Approximately what time of the year

16    do you know?  Do you recall?

17           A.      No.

18           Q.      What was the position you held there

19    at Factory Card and Party Outlet?

20           A.      I was a supervisor.

21           Q.      And just for the record, when I refer

22    to Factory Card and Party Outlet, we're referring to

23    store No. 206?

24           A.      209.
```

1          A.      That's where like somebody comes in

2     and say you buy, you know, $20 worth of stuff.  She

3     would keep your receipt.  She would void out the

4     receipt and then keep the money.

5          Q.      The role of store manager, is that

6     the same job you held from that time in 1996 through

7     roughly June, July 2009?

8          A.      Correct.

9          Q.      When your employment concluded with

10    Factory Card and Party Outlet?

11         A.      Yes.

12         Q.      Did your duties change in any way

13    throughout that period?

14         A.      Not really.

15         Q.      Essentially the same?

16         A.      Right.

17         Q.      You were in charge of everything?

18         A.      Yeah.

19         Q.      And throughout your employment there,

20    prior to the incident that resulted in the injury

21    that is the subject of this litigation or a part of

22    this litigation, did you have any other health

23    conditions that limited your ability to perform any

24    work at all?

1            IN THE UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS
2                  SPRINGFIELD DIVISION

3

4   LORA J. WHEATLEY,                    )
                 Plaintiff,              )
5                                        )
                 -vs-                    ) NO. 11-cv-3414
6                                        )
    FACTORY CARD AND PARTY OUTLET,       )
7   a division of AMSCAN HOLDINGS,       )
    INC.,                                )
8                 Defendant.             )

9

10

11                  DEPOSITION OF

12                  LORA WHEATLEY

13               SPRINGFIELD, ILLINOIS

14                    12/10/2013

15

16

17

18

19

20

21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800)288-3376

23   REPORTED BY:  LAUREL A. PATKES, CSR #084-001340

24   FILE NO. A70B6C5

**EXHIBIT**

F

Page 1

1          Q.      Okay.  I see.

2                  Well, let's back up and talk about

3      the incident where you suffered an injury to, I

4      believe it was your right foot, right?

5          A.      Right.

6          Q.      So can you tell me a little bit

7      about -- let's start off with the date of the injury

8      to the best of your recollection.

9          A.      It was right around March/April

10     timeframe I believe, and we had an intruder in our

11     house, and my husband escorted him downstairs, and

12     there was a struggle over the phone, and I got

13     stepped on or kicked or something, and that's what

14     resulted in it.

15         Q.      Was this someone that your family

16     knew?

17         A.      Yes; daughter's ex-boyfriend

18     actually.

19         Q.      But fair to say an unwanted guest

20     that you were asking to leave your home?

21         A.      Right, yes.

22         Q.      So was it the intruder that stepped

23     on you or kicked you you said?

24         A.      I don't know because it was a scuffle

MAR-27-2008 FRI 11:07 AM JACKSONVILLE FAMILY MED.    FAX NO. 12172436165        P. 02/02

DEA #

JACKSONVILLE FAMILY MEDICAL ASSOCIATES
JAMES A. BOHAN, M.D.
1602 WEST LAFAYETTE STREET
JACKSONVILLE, IL 62650
217-243-7200  FAX 217-243-0165

NAME: Lora Wheatley

ADDRESS: 4-18-64          DATE: 3-27-09

℞ (Please Print)

Patient may return
to work without
restrictions.

Triplee:        Thanks,

☐ Label

REFILL _____ TIMES    PRN    NR
☐ MAY SUBSTITUTE
☐ MAY NOT SUBSTITUTE

Bohan                      M.D.



EXHIBIT
G
tabbies

1           IN THE UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF ILLINOIS
2                 SPRINGFIELD DIVISION

3

4   LORA J. WHEATLEY,                    )
                    Plaintiff,           )
5                                        )
                  -vs-                   )  NO. 11-cv-3414
6                                        )
    FACTORY CARD AND PARTY OUTLET,       )
7   a division of AMSCAN HOLDINGS,       )
    INC.,                                )
8               Defendant.               )

9

10

11                    DEPOSITION OF

12                    LORA WHEATLEY

13                 SPRINGFIELD, ILLINOIS

14                     12/10/2013

15

16

17

18

19

20

21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800)288-3376

23   REPORTED BY:  LAUREL A. PATKES, CSR #084-0013

24   FILE NO. A70B6C5

EXHIBIT
H

1          So this is a doctor's note from

2   Dr. Bohan on March 27, 2009.  It's FC 15.  So that

3   says, correct me if I'm wrong, patient may return to

4   work without restrictions?

5          A.     Right.  That was the first time I

6   went to see him, yeah.

7          Q.     So then you went to work, and then

8   you described that you unloaded a truck, did some

9   other things, and went home and couldn't walk?

10         A.     Right.

11         Q.     So take me through again, what did

12  you do at that point?

13         A.     I called Bohan back, and he took me

14  off for I believe it was two weeks and put me on

15  crutches.

16         Q.     Okay.  And did you get an FMLA notice

17  from the company in explanation of how much time you

18  had left?

19         A.     No.

20         Q.     Okay.

21         A.     I was going to say, I think I might

22  have taken vacation time but I'm not positive.

23         Q.     I'll just show you what's marked as

24  FC 18.  It's a certified letter from April 16, 2009.





SEE BACK OF DOCUMENT FOR LISTING OF SECURITY FEATURES

JFMA

James A. Bohan, M.D.
1602 West Lafayette Avenue
Jacksonville, IL 62650
Phone (217) 243-7200

Name: Linda Wheatley          Age:
Address:          4-18-64          Date: 4-21-09

Label

Times          PRN          NR

May Substitute

May Not Substitute:                                    M.D.

MAY-02-2009  13:35      TCU                          5787    P.001/001

ORTHOPEDIC CENTER OF ILLINOIS, LTD.
KAROLYN SENICA, M.D.
2709 OLD JACKSONVILLE ROAD
SPRINGFIELD, IL 62704

(217) 862-0284

NAME _____  AGE _____ DATE _0/42-509_

ADDRESS _____

Rx

pt _#_ to remain
off from work
till _release_.

No. Rt foreble
pain

☐ DISPENSE AS WRITTEN
☐ MAY SUBSTITUTE

Refill _____  Times

(Signature)

EXHIBIT
J

# ORTHOPAEDIC
## CENTER OF ILLINOIS

www.orthocenter.net

**Springfield Office**

David W. Mack, M.D.
*Board Certified*
*Spine Surgery*
*Total Joint Replacements*

Ron E. Romanelli, M.D.
*Board Certified*
*Total Joint Replacements*
*Shoulder Surgery*

Rod J. Herrin, M.D.
*Board Certified*
*Sports Medicine*
*Knee & Shoulder Surgery*

Keri M. Senica, M.D.
*Board Certified*
*General Orthopaedics*

Lee K. Ludwig, M.D.
*Board Certified*
*Total Joint Replacements*
*Shoulder Surgery*

Tim A. VanFleet, M.D.
*Board Certified*
*Spine Surgery*

Barry T. Minkkinen, M.D.
*Board Certified*
*General Orthopaedics*
*Foot & Ankle Surgery*

Joe L. Williams, M.D.
*Board Eligible*
*Spine Surgery*

Chris W. Mendez, M.D.
*Board Eligible*
*Hand, Wrist, Elbow*
*& Shoulder Surgery*

Paul A. Bruncker, M.D.
*Board Certified*
*Electromyography*
*Acute Pain Management*

John E. Sigle, D.P.M.
*Board Certified*
*Podiatry/Orthotics*

John D. Watson, M.D.
*Board Certified*
*Electromyography*
*Physical Medicine*
*Rehabilitation*

Kim J. Lathway, P.A.-C
*Physician Assistant, Sports*

**Jacksonville Office**

Barry A. Warren, M.D.
*Board Certified*
*Total Joint Replacements*
*Sports Medicine*

ORTHOPAEDIC CENTER OF ILLINOIS, LTD.
KAROLYN SENICA, M.D.
3135 OLD JACKSONVILLE ROAD
SPRINGFIELD, IL 62704
(217) 862-0524        D41864

NAME _____ AGE ____
ADDRESS _____ DATE 052109

R  Pt to resume ____
___ will kill
referred She is
scheduled for an
MRI on right foot 6/4/09
trouble on 6/4/09
+ will return to _____
on 6/10/09 to determine
that to do next and
this _____

☐ DISPENSE AS WRITTEN.  _____ Refills _____ times
☐ MAY SUBSTITUTE
_____

_____

3135 Old Jacksonville Road, Suite 350 · Springfield, IL · 62704
Ph: (217) 862-0524 · Fx: (217) 862-0500

EXHIBIT
K



**✶Aetna®**

## Attending Physician Statement
Complete and sign the form using BLUE or BLACK ink.

Aetna Life Insurance Company
P.O. Box 14552
Lexington, KY 40512-4552

**1. Patient Instructions** — The Physician will complete Sections 2 through 7.
The Patient will complete Section 1.
The Patient should also fill in their name at the top of Pages 2 and 3

The *Patient* is responsible for completing this section, and for ensuring that their Attending Physician completes the remainder of this statement. The Patient is responsible for paying any fees that may be charged for completion of this form by their physician. **If you have any questions, please call (866) 282-8496.**

(a) Control Number _809628_

(b) Whentley, Lora J

| Patient Name (Last, First, Middle Initial). | Social Security Number | Birth Date (MM/DD/YYYY) | Height | Weight(lb) |

(c) Patient Gender ☐ Male ☑ Female

(d) _____

Patient Home Address -- Required (Current No., St., Town, State, Zip – no PO boxes) ☐ Check if New

(e) Mailing Address, if different from Home address _____

(f) Patient Employer Name/City/State _____

(g) Patient Telephone Number _____ ☐ Check if New

(h) Job Title/Occupation _____

(i) Type of Claim: ☐ Short Term Disability  ☐ Long Term Disability  ☐ Waiver of Premium
☐ Long Term / Permanent Total Disability

## 2. Physician Instructions

The *Attending Physician* should complete the items below, based upon a recent examination. Attach additional documentation as needed. If you have any questions, please call (866) 282-8496.

Please complete form in its entirety and fax to (877) 693-7258. Pages 2 and 3 MUST be completed before faxing.

## 3. Impairing Diagnosis & Treatment

(a) For medical reasons, the patient will need to be absent from work due to a disability beginning
on _7-1-09_ and ending on _8-15-09_ .
(MM/DD/YYYY)                    (MM/DD/YYYY)

(b) Primary Diagnosis _Tarsel Tunnel_           Primary ICD Code _355.5_
Secondary Diagnosis _____           Secondary ICD Code _____
Other Diagnoses _____           Other ICD Codes _____

(c) Height _____ Weight _____ Date Measured (MM/DD/YYYY) _____

(d) If Pregnancy related, delivery or expected date ............ Month _____ Day _____ Year _____
Delivery Type: ☐ Vaginal  ☐ Cesarean

(e) Surgery Date ........................................... Month _____ Day _____ Year _____
Primary Procedure _____           Primary CPT Code _____
Secondary Procedure _____           Secondary CPT Code _____
Other Procedures _____           Other CPT Codes _____

(f) Medication(s)/Dose/Frequency _Neurontin 600m QD_

Impairment from medication effects _____

(g) Is patient still under your care for this condition? ☑ Yes  ☐ No, date service terminated _____
(MM/DD/YYYY)

(h) Treatment summary _Tarsal Tunnel_

(i) Office visit dates: First _6/17/09_ Last _7/1/09_ Next _7/22/09_ Frequency of appointments _____
(MM/DD/YYYY)        (MM/DD/YYYY)        (MM/DD/YYYY)

(j) Was patient recently hospitalized? ☑ No ☐ Yes  Date hospitalized: Admit _____ Discharge _____
(MM/DD/YYYY)        (MM/DD/YYYY)

(k) Hospital Name/City/State _____

**EXHIBIT**

_m_

AP DT 01-001 OR
GC-14BB-2 (8-08)

Page 2

Patient Name *(Last, First Middle Initial)* Required

Wheatley, Lora J

## 4. History

(a) Symptoms: _Weakness , Numbness in foot/leg_

(b) Date symptoms first appeared or accident happened? Month _C_ Day _17_ Year _09_
(c) Has patient ever had same or similar condition? ☑ No ☐ Yes, state when and describe.

(e) Is condition due to injury or sickness arising out of patient's employment? ☑ No ☐ Yes ☐ Unknown
(f) Other Treating Physicians
   Name _Bohan_ _____ Specialty _Primary Care_ City _Jacksonville_ State _IL_
   Name _____ Specialty _____ City _____ State ____

## 5. Abilities/Limitations

(a) Patient is: Place remarks in item (d) below, if applicable.
   - Competent to endorse checks and direct the use of proceeds thereof .... ☑ Yes ☐ No ☐ Other/describe in (d)
   - Able to work with others ........................ ☑ Yes ☐ No ☐ Other/describe in (d)
   - Able to give supervision ........................ ☑ Yes ☐ No ☐ Other/describe in (d)
   - Able to work cooperatively with others in group setting .................. ☐ Yes ☐ No ☐ Other/describe in (d)
   - Able to do? Select one: Place remarks in item (d) below, if applicable.
      ☐ Heavy work activity. No limitations of functional capacity.
      ☐ Medium work activity. Exerting 20-50 pounds of force occasionally, and/or 10-25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly
      ☐ Light work activity. Exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently
      ☐ Sedentary work activity – moderate limitation of functional capacity. Exerting up to 10 pounds of force occasionally. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time
      ☑ No ability to work. Severe limitation of functional capacity; incapable of minimal activity
      ☐ Other. Place remarks in item (d) below.
(b) What medical restrictions/limitations are you placing on patient? *(Activities of Daily Living, Driving, Lifting, Pulling, Pushing, and Amounts, etc.)* _Immobilize -_

   - Number of Hours patient is capable of working in a day: ☐ 12 ☐ 10 ☐ 8 ☐ 6 ☐ 4 ☐ 2 ☑ 1 Hour/Day
   - Number of Days per week patient is able to work: ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☐ 6 ☑ 7 Days/Week
   - Date you prescribed restriction on work activities ...... Month _7_ Day _1_ Year _09_
   - How long are these restrictions/limitations in effect? ____ Days _6_ Weeks ____ Months ☐ No Longer
   - Estimated return to work date? _8-15-09_ modified duty _____ full duty
      *(MM/DD/YYYY)* *(MM/DD/YYYY)*
(c) Objective findings that substantiate impairment *(current laboratory, physical and/or mental status examination, and other testing)*

(d) Other/Comments

## 6. Current Status

(a) Patient has ........................ ☐ Improved ☑ Stabilized ☐ Regressed ☐ Not Applicable
(b) Is there a medical contraindication for patient to participate in Vocational Rehabilitation (job training) programs?
   ☑ No ☐ Yes, please explain
(c) In your opinion, is your patient motivated to return to work? _Yes_

## 7. Physician Information

| Attending Physician's Name *(Print)* | Degree | Specialty |
|---|---|---|
| | | DPM |
| Address *(No. Street, City, State, Zip Code)* | Telephone Number | Fax Number |
| | | 217-243-5003 |
| Signature | FOOT & ANKLE ASSOCIATES OF CENTRAL IL, LLC | Date *(MM/DD/YYYY)* |
| | 1515 W. WALNUT, #12 | 07/08/09 |
| AF DT 01-001 CIR | JACKSONVILLE, IL. 62650 | |
| GC-1466-2 (9-08) | (217) 243-1101 | |

_Jeffrey Fleisch_



April 16, 2009

<u>Via US Certified Mail – Return Receipt Requested</u>

Lora Wheatley
608 Water Tower Road
Murrayville, IL 62668

7008 3230 0000 3338 8695

Dear Lora:

Enclosed please find forms pertaining to the Family Medical Leave Act (FMLA):

1) A "Notice of Eligibility and Rights & Responsibilities" Form – Please review.

2) A "Certification of Healthcare Provider for Employee's Serious Health Condition" form along with a copy of your job description – these need to be reviewed and completed by your Physician and may be faxed to my attention at 630-579-2423. *Please Note: This form is due back within15 days of receipt.*

Also, all Full-Time FCPO associates who go on leave for personal medical reasons are eligible to apply for Short Term Disability (STD) benefits through Aetna Insurance. Should an employee's incapacity continue beyond 14 days, and if approved by Aetna Insurance as medically necessary, STD will pay 60% of your weekly earnings for up to a maximum of 11 weeks.

Enclosed please find:

3) Aetna "Employee Request for Information" form – to be completed by you and faxed directly to Aetna Insurance.

4) Aetna "Attending Physician Statement" form – to be completed by your Physician and faxed directly to Aetna Insurance.

These forms are your responsibility and must be sent directly to Aetna at the numbers indicated on the forms.

I encourage you to complet[e]
disability payments can begi[n]
directly to explain the plan b[...]
you. If approved for disabi[lity]
your disability payments.

If you have any questions on [...]

Sincerely,

Pam Broderick
Benefits Manager

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lora Wheatley
608 Water Tower Rd
Murrayville, IL 62668

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Donal Wheaty_                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Donal Wheatley                    4/22/09

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☒ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merch
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
(Transfer from service label)        7008 3230 0000 3338 8695

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-

**EXHIBIT**
N

Notice of Eligibility and Rights &
Responsibilities
(Family and Medical Leave Act)

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division



OMB Control Number: 1215-0181
Expires: 12/31/2011

In general, to be eligible an employee must have worked for an employer for at least 12 months, have worked at least 1,250 hours in the 12 months preceding the leave, and work at a site with at least 50 employees within 75 miles. While use of this form by employers is optional, a fully completed Form WH-381 provides employees with the information required by 29 C.F.R. § 825.300(b), which must be provided within five business days of the employee notifying the employer of the need for FMLA leave. Part B provides employees with information regarding their rights and responsibilities for taking FMLA leave, as required by 29 C.F.R. § 825.300(b), (c).

**[Part A — NOTICE OF ELIGIBILITY]**

TO: _____ Lori Wheatley _____
Employee

FROM: _____ Pam Kosnowick _____
Employer Representative

DATE: _____ 4/10/2009 _____

On _4.9.2009_ , you informed us that you needed leave beginning on _4.8.2009_ for:

_____ The birth of a child, or placement of a child with you for adoption or foster care;

_✓_ Your own serious health condition;

_____ Because you are needed to care for your _____ spouse; _____ child; _____ parent due to his/her serious health condition.

_____ Because of a qualifying exigency arising out of the fact that your _____ spouse; _____ son or daughter; _____ parent is on active duty or call to active duty status in support of a contingency operation as a member of the National Guard or Reserves.

_____ Because you are the _____ spouse; _____ son or daughter; _____ parent; _____ next of kin of a covered servicemember with a serious injury or illness.

This Notice is to inform you that you:

_✓_ Are eligible for FMLA leave (See Part B below for Rights and Responsibilities)      *You currently have 4.3 weeks of the 12 weeks available due to leave from 11-08 thru 11-3008*

_____ Are not eligible for FMLA leave, because (only one reason need be checked, although you may not be eligible for other reasons):

_____ You have not met the FMLA's 12-month length of service requirement. As of the first date of requested leave, you will have worked approximately _____ months towards this requirement.

_____ You have not met the FMLA's 1,250-hours-worked requirement.

_____ You do not work and/or report to a site with 50 or more employees within 75 miles.

If you have any questions, contact _Pam Kosnowick @ 1-800-574-0033_ or view the

FMLA poster located in _STOL_

**[PART B-RIGHTS AND RESPONSIBILITIES FOR TAKING FMLA LEAVE]**

As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have FMLA leave available in the applicable 12-month period. However, in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by _April 15, 2009_ . (If a certification is requested, employers must allow at least 15 calendar days from receipt of this notice; additional time may be required in some circumstances.) If sufficient information is not provided in a timely manner, your leave may be denied.

_____ Sufficient certification to support your request for FMLA leave. A certification form that sets forth the information necessary to support your request _/ is/_ is not enclosed.

_____ Sufficient documentation to establish the required relationship between you and your family member.

_____ Other information needed: _____

_____ No additional information requested

Page 1                    CONTINUED ON NEXT PAGE                    Form WH-381 Revised January 2009

# DEATH IN THE FAMILY

We understand that the loss of a family member is a very difficult time. We have established a bereavement program to allow you time off from work without necessarily requiring you to incur a loss of income.

For purposes of this benefit, we define a 'family' member as follows: spouse, child, sibling, parent, grandparent, grandchild or your spouse's child, sibling, parent, grandparent, or grandchild.

Full-time and part-time associates will receive up to three (3) paid consecutive scheduled workdays for bereavement leave.

# FAMILY AND MEDICAL LEAVE (FMLA)

Family/Medical Leave of Absence

If you have been employed with PCPO for at least one year and have been "Actively Employed" ("Actively Employed" means you are receiving pay and are at work, performing your regular duties or are absent with pay) for at least 1,250 hours during the 12 month period immediately prior to the beginning of the leave, you are eligible for up to twelve weeks of unpaid Family/Medical leave within a rolling 12 month period for any one or more of the following reasons:

1. To care for a newborn child or to care for a child placed with you for adoption or foster care within twelve months after the child's birth or placement
2. To care for your spouse, son, daughter or parent who has a serious health condition
3. Because of your own serious health condition that makes you unable to perform the functions of your position

If state or local law requirements differ from the federal law, you will be entitled to the benefits of whichever law is more favorable. A *"rolling 12 month period"* is measured backward from the date you begin using FMLA leave. The total number of hours of leave entitlement is calculated based on your weekly work schedule and on the amount of family/medical leave taken in the immediately preceding 12 month period. If medically necessary, leave taken because of your serious health condition, the health of your spouse, son, daughter, or parent need not be taken continuously and may be taken either on an intermittent basis or taken such that you are effectively on a reduced work schedule. Intermittent leave or leave on a reduced work schedule for care of a newborn or adopted child is at the discretion of your Human Resources representative.

In order to qualify for a Family/Medical leave based on your own serious health condition or that of your Family member, you must provide a written certification issued by a health care provider. A FMLA leave will not be extended by any holidays that occur during the leave. Generally, upon return to work from Family/Medical leave, you will be restored to your former position or, if such position is not available, to an equivalent position with equivalent benefits, pay, and terms and conditions of employment.

If you are on FMLA leave due to your own personal health, you may be required to present the Company with a fitness-for-duty certificate from a healthcare provider before returning to work. Absences covered by FMLA shall not be considered under the Company's absenteeism policy.

For further information regarding a Family/Medical leave of absence or your eligibility for benefits while on leave, please contact your Human Resources representative.

# PERSONAL LEAVE OF ABSENCE

Sometimes you may need time off for reasons other than what we've already mentioned. Your request for a Personal Leave of absence will be considered and evaluated on a number of different factors, such as, but not limited to, department workloads requirements, staffing considerations, job performance, and attendance. Whenever possible, the Company will attempt to accommodate your request.

All full-time associates employed by PCPO for a minimum of 90 days may be eligible to apply for a Personal Leave of absence not to exceed 60 calendar days. Requests for personal leave of absence must be made in writing to the Vice President of Human Resources, who determines final approval.

Should the need arise for a personal leave of absence, notify your supervisor. For questions on personal leave of absences and eligibility, please contact your Human Resources representative.

```
1              IN THE UNITED STATES DISTRICT COURT
           FOR THE CENTRAL DISTRICT OF ILLINOIS
2                    SPRINGFIELD DIVISION

3

4     LORA J. WHEATLEY,                    )
                    Plaintiff,             )
5                                          )
                    -vs-                   ) NO. 11-cv-3414
6                                          )
      FACTORY CARD AND PARTY OUTLET,       )
7     a division of AMSCAN HOLDINGS,       )
      INC.,                                )
8                    Defendant.            )

9

10

11                    DEPOSITION OF

12                    LORA WHEATLEY

13                SPRINGFIELD, ILLINOIS

14                    12/10/2013

15

16

17

18

19

20

21    ATKINSON-BAKER, INC.
      COURT REPORTERS
22    (800)288-3376

23    REPORTED BY:  LAUREL A. PATKES, CSR #084-001340

24    FILE NO. A70B6C5
```

EXHIBIT

```
 1                     So this is a doctor's note from
 2    Dr. Bohan on March 27, 2009.  It's FC 15.  So that
 3    says, correct me if I'm wrong, patient may return to
 4    work without restrictions?
 5            A.      Right.  That was the first time I
 6    went to see him, yeah.
 7            Q.      So then you went to work, and then
 8    you described that you unloaded a truck, did some
 9    other things, and went home and couldn't walk?
10            A.      Right.
11            Q.      So take me through again, what did
12    you do at that point?
13            A.      I called Bohan back, and he took me
14    off for I believe it was two weeks and put me on
15    crutches.
16            Q.      Okay.  And did you get an FMLA notice
17    from the company in explanation of how much time you
18    had left?
19            A.      No.
20            Q.      Okay.
21            A.      I was going to say, I think I might
22    have taken vacation time but I'm not positive.
23            Q.      I'll just show you what's marked as
24    FC 18.  It's a certified letter from April 16, 2009.
```

1    I'll just let you take a look at that before I ask

2    you any questions about that.

3                    (Pause)

4         A.    Okay.

5         Q.    The only reason I show you that is

6    because I just asked if you were ever provided

7    notice of eligibility and rights and

8    responsibilities from FMLA from the company

9    indicating how much FMLA time you had left, and you

10   indicated no.

11              Have you ever seen that letter

12   before?

13        A.    Yeah, possibly.  I forgot.

14        Q.    So is it accurate to say that this

15   letter indicates that you have at that point 9.3

16   weeks of FMLA time left?

17              It would be on the second page.

18        A.    Yes.

19        Q.    And also on FC 18, there's what would

20   be the -- it's a facsimile copy, but it's a green

21   card from certified mail.

22        A.    Right, that my husband signed, yes.

23        Q.    Okay.  So following your receipt of

24   that notice, when was the next time that you

1              IN THE UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS
2                   SPRINGFIELD DIVISION

3

4  LORA J. WHEATLEY,                    )
                  Plaintiff,            )
5                                       )
              -vs-                      ) NO. 11-cv-3414
6                                       )
FACTORY CARD AND PARTY OUTLET,          )
7  a division of AMSCAN HOLDINGS,       )
INC.,                                   )
8              Defendant.               )

9

10

11                   DEPOSITION OF

12                   LORA WHEATLEY

13              SPRINGFIELD, ILLINOIS

14                   12/10/2013

15

16

17

18

19

20

21  ATKINSON-BAKER, INC.
COURT REPORTERS
22  (800)288-3376

23  REPORTED BY:  LAUREL A. PATKES, CSR #084-001340

24  FILE NO. A70B6C5

EXHIBIT

P

```
 1           A.      No, because I got a second opinion.

 2           Q.      There's another doctor's note?

 3           A.      Right.

 4           Q.      Okay.  So you were -- well, let me

 5      say it this way.

 6                   During that time period, you were

 7      never released to work --

 8           A.      Correct.

 9           Q.      -- without restrictions or with

10      restrictions?

11           A.      Correct.

12           Q.      Okay.  So now moving to on or about

13      June 13, 2009, is it your understanding that that's

14      when your FMLA leave expired with Factory Card and

15      Party Outlet?

16           A.      I'm sorry.  Could you repeat that?

17           Q.      Is it your understanding that

18      approximately June 13, 2009 is when your FMLA leave

19      expired with Factory Card and Party?

20           A.      My understanding was July 11th.

21           Q.      Okay.  Tell me if this makes sense.

22                   The FMLA leave expired June 13, 2009,

23      and the company agreed to give you an additional

24      four weeks as an accommodation --
```

1          A.      Right.

2          Q.      -- to see whether you would be

3    released for return to work?

4          A.      Yeah.

5          Q.      Is that accurate?

6          A.      Yes.

7          Q.      So then, correct me if I'm wrong, I

8    think we move forward to July 1, 2009 where I think

9    you -- well, let me just ask it this way.

10              What, to your recollection, occurred

11   on July 1, 2009?

12         A.      I called Cheryl Cole and told her the

13   doctor was going to keep me out for two more weeks

14   and -- let me think.  She said that they were going

15   to terminate me on the 11th.

16         Q.      Of July?

17         A.      Yes.

18         Q.      Was there anything else discussed

19   during that conversation?

20         A.      No.  I called back because my husband

21   had talked to somebody at work, and they said I

22   needed to call the American with Disabilities

23   organization and talk to someone there, and I talked

24   to a Peter in that timeframe.  I believe it was like



July 2, 2009                    *long +*

Lora Wheatley
608 Water Tower Road
Murrayville, IL  62668

Dear Lora:

This letter is a follow up to our phone conversation on July 1, 2009 regarding your medical leave of absence and your employment status with Factory Card & Party Outlet.

In the past 12 months, you have taken two separate leave of absences under the FMLA.  Your first leave, for family medical reasons, was from November 11, 2008 through November 30, 2008. This leave used 2.7 weeks of the 12 weeks allowed under FMLA.  Your second and current leave began as of April 8, 2009 for personal medical reasons.  Unfortunately these two leaves of absence caused you to exhaust your 12 weeks of eligible FMLA leave effective June 13, 2009. Since you are unable to return at this time, we can no longer guarantee that we will hold your position for you.

As we discussed, you remain on "Active" status for 4 additional weeks after the June 13, 2009 expiration of your FMLA under the Personal Leave Policy.  At the conclusion of the 4 weeks, if you find that you are still unable to return, we will no longer maintain you as an active employee and will have no recourse but to end our employment relationship effective July 11, 2009.  Please note that your file will reflect a status of "eligible for rehire" and you are welcome to reapply for any open positions at the time you are released to return to work.

If you have any questions regarding this letter, or your employment status with the company, feel free to contact me directly at 630-579-2029.

Sincerely,

*Cheryl L. Cole*

Cheryl L. Cole
Regional Human Resource Manager

cc:     Pam Broderick, Benefits Manager
        Jim Ryan, Director of Human Resources
        Debbie Smetana, Vice President Human Resources



EXHIBIT

Q

2727 Diehl Road, Naperville, IL 60563   (630) 579-2000

Wheatley.ID 00011

# DEATH IN THE FAMILY

We understand that the loss of a family member is a very difficult time. We have established a bereavement program to allow you time off from work without necessarily requiring you to incur a loss of income.

For purposes of this benefit, we define a 'family' member as follows: spouse, child, sibling, parent, grandparent, grandchild or your spouse's child, sibling, parent, grandparent, or grandchild.

Full-time and part-time associates will receive up to three (3) paid consecutive scheduled workdays for bereavement leave.

# FAMILY AND MEDICAL LEAVE (FMLA)

Family/Medical Leave of Absence

If you have been employed with PCPO for at least one year and have been "Actively Employed" ("Actively Employed" means you are receiving pay and are at work, performing your regular duties or are absent with pay) for at least 1,250 hours during the 12 month period immediately prior to the beginning of the leave, you are eligible for up to twelve weeks of unpaid Family/Medical leave within a rolling 12 month period for any one or more of the following reasons:

1. To care for a newborn child or to care for a child placed with you for adoption or foster care within twelve months after the child's birth or placement

2. To care for your spouse, son, daughter or parent who has a serious health condition

3. Because of your own serious health condition that makes you unable to perform the functions of your position

If state or local law requirements differ from the federal law, you will be entitled to the benefits of whichever law is more favorable. A *"rolling 12 month period"* is measured backward from the date you begin using FMLA leave. The total number of hours of leave entitlement is calculated based on your weekly work schedule and on the amount of family/medical leave taken in the immediately preceding 12 month period. If medically necessary, leave taken because of your serious health condition, the health of your spouse, son, daughter, or parent need not be taken continuously and may be taken either on an intermittent basis or taken such that you are effectively on a reduced work schedule. Intermittent leave or leave on a reduced work schedule for care of a newborn or adopted child is at the discretion of your Human Resources representative.

In order to qualify for a Family/Medical leave based on your own serious health condition or that of your Family member, you must provide a written certification issued by a health care provider. A FMLA leave will not be extended by any holidays that occur during the leave. Generally, upon return to work from Family/Medical leave, you will be restored to your former position or, if such position is not available, to an equivalent position with equivalent benefits, pay, and terms and conditions of employment.

If you are on FMLA leave due to your own personal health, you may be required to present the Company with a fitness-for-duty certificate from a healthcare provider before returning to work. Absences covered by FMLA shall not be considered under the Company's absenteeism policy.

For further information regarding a Family/Medical leave of absence or your eligibility for benefits while on leave, please contact your Human Resources representative.

# PERSONAL LEAVE OF ABSENCE

Sometimes you may need time off for reasons other than what we've already mentioned. Your request for a Personal Leave of absence will be considered and evaluated on a number of different factors, such as, but not limited to, department workloads requirements, staffing considerations, job performance, and attendance. Whenever possible, the Company will attempt to accommodate your request.

All full-time associates employed by PCPO for a minimum of 90 days may be eligible to apply for a Personal Leave of absence not to exceed 60 calendar days. Requests for personal leave of absence must be made in writing to the Vice President of Human Resources, who determines final approval.

Should the need arise for a personal leave of absence, notify your supervisor. For questions on personal leave of absences and eligibility, please contact your Human Resources representative.

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF ILLINOIS
 2                   SPRINGFIELD DIVISION

 3

 4   LORA J. WHEATLEY,                    )
                    Plaintiff,            )
 5                                        )
                    -vs-                  )  NO. 11-cv-3414
 6                                        )
     FACTORY CARD AND PARTY OUTLET,       )
 7   a division of AMSCAN HOLDINGS,       )
     INC.,                                )
 8                   Defendant.           )

 9

10

11                   DEPOSITION OF

12                   LORA WHEATLEY

13               SPRINGFIELD, ILLINOIS

14                    12/10/2013

15

16

17

18

19

20

21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800)288 3376

23   REPORTED BY:  LAUREL A. PATKES, CSR #084-001340

24   FILE NO. A70B6C5
```

EXHIBIT

R

tabbies

1          Q.      And at what point after that did you
2     start or at what point did you apply for
3     unemployment insurance or unemployment benefits?
4          A.      I don't recall the date.
5          Q.      Would it have been after this
6     document?
7          A.      Yes.
8          Q.      After June 2010?
9          A.      Yes.
10         Q.      In applying for unemployment
11    benefits, do you recall making any kind of statement
12    or executing a document in which you represented
13    that you were able and willing to work and not
14    disabled?
15         A.      Yes.
16         Q.      So you represented as a condition of
17    receiving unemployment benefits that you were not
18    disabled?
19         A.      Correct.
20         Q.      Here's another document, two-page
21    document, and this is Bates stamped number -- it's
22    Wheatley 11, and that's a two-page document.  It's a
23    July 2, 2009 correspondence to you from Cheryl Cole,
24    Regional Human Resource Manager.

1              The first page is a letter.

2              The second page is a fitness for duty

3    certification that she requested you have completed

4    to return to work.

5              Is that accurate?

6         A.      Yeah.  That's my signature, yeah.

7         Q.      I'll give you a chance to look at

8    that letter before I ask you any questions about it.

9    I'll give you some time.

10                (Pause)

11        A.      Okay.

12        Q.      Okay.  Without me reading the entire

13   text of the letter, are there any statements in this

14   July 2, 2009 letter factually with which you

15   disagree?

16        A.      Not that I disagree; I mean, it's

17   kind of vague.

18        Q.      And this letter was written after you

19   had the telephone conversation that you referenced

20   with Cheryl Cole, correct?

21        A.      Correct.

22        Q.      Well, I won't read through the whole

23   thing but let's just go through a few things.

24                The letter references, the July 2,

1    2009 letter references the FMLA leave that you had

2    taken.

3              A.      Uh-huh.

4              Q.      And that you had exhausted the two

5    weeks of FMLA eligible time, correct?

6              A.      Correct.

7              Q.      And that the company extended that

8    active status for an additional four weeks after

9    expiration of the FMLA period, right?

10             A.      Correct.

11             Q.      And there's a statement which says

12   verbatim, "At the conclusion of the four weeks, if

13   you find that you are still unable to return, we

14   will no longer maintain you as an active employee

15   and will have no resource but to end our employment

16   relationship effective July 11, 2009.  Please note

17   that your file will reflect the status of 'eligible

18   for rehire,' and you are welcome to reapply for any

19   open positions at the time you are released to

20   return to work."

21                     Is that accurate?  Is that what the

22   letter says?

23             A.      Yes.  That's what it says.

24             Q.      So at any point before or after this

1   letter, did you provide Factory Card and Party

2   Outlet with any document showing you were released

3   to return to work with or without restrictions?

4       A.      No.

5       Q.      At any time did you attempt to

6   reapply for any position with Factory Card and Party

7   Outlet?

8       A.      No.

9       Q.      When was the last -- before this

10  litigation, when was the last communication, written

11  or otherwise, that you had with anyone at Factory

12  Card and Party Outlet?

13      A.      This litigation is it.

14      Q.      Okay.  So prior to this litigation,

15  was your July 1 telephone conversation with Cheryl

16  Cole and this July 2nd letter, would that represent

17  the last communication you had?

18      A.      I don't recall.

19      Q.      Do you recall any communication

20  between you and Factory Card and Party Outlet

21  between July 2nd and when this litigation was filed,

22  July 2nd, 2009, which was when this letter was sent,

23  and when the litigation was filed?

24      A.      Yes, I believe I talked to them, but

```
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS
 2                SPRINGFIELD DIVISION

 3

 4   LORA J. WHEATLEY,                    )
                    Plaintiff,           )
 5                                       )
              -vs-                       ) NO. 11-cv-3414
 6                                       )
     FACTORY CARD AND PARTY OUTLET,      )
 7   a division of AMSCAN HOLDINGS,      )
     INC.,                               )
 8                Defendant.             )

 9

10

11                  DEPOSITION OF

12                  LORA WHEATLEY

13               SPRINGFIELD, ILLINOIS

14                   12/10/2013

15

16

17

18

19

20

21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800)288-3376

23   REPORTED BY:  LAUREL A. PATKES, CSR #084-001340

24   FILE NO. A70B6C5
```

EXHIBIT
S

1    whether any of those doctors' notes were provided by

2    you to the company, to Factory Card and Party

3    Outlet?

4          A.       They probably all were.  I would say

5    of all of them.

6          Q.       To your recollection, do any of those

7    notes indicate a return-to-work date where your

8    doctor advised that you would be able to return to

9    work on a certain date?

10         A.       Well, I can't really read this one to

11   be honest with you.  It looks like patient to remain

12   off work till -- I can't read the last word.

13         Q.       That's okay.  I don't expect you to

14   read the doctor's handwriting.

15         A.       Okay.

16         Q.       But basically is it accurate to say

17   that you were not released to return to work at any

18   time during that period where these doctors' notes

19   span from April 2009 through June 2009.

20         A.       Well, this one says patient to remain

21   off work until July 6, 2009 and may return to work

22   with no restrictions.

23         Q.       But you weren't, in fact, released to

24   work with no restrictions after that, right?

1          A.      No, because I got a second opinion.

2          Q.      There's another doctor's note?

3          A.      Right.

4          Q.      Okay. So you were -- well, let me

5    say it this way.

6                  During that time period, you were

7    never released to work --

8          A.      Correct.

9          Q.      -- without restrictions or with

10   restrictions?

11         A.      Correct.

12         Q.      Okay. So now moving to on or about

13   June 13, 2009, is it your understanding that that's

14   when your FMLA leave expired with Factory Card and

15   Party Outlet?

16         A.      I'm sorry. Could you repeat that?

17         Q.      Is it your understanding that

18   approximately June 13, 2009 is when your FMLA leave

19   expired with Factory Card and Party?

20         A.      My understanding was July 11th.

21         Q.      Okay. Tell me if this makes sense.

22                 The FMLA leave expired June 13, 2009,

23   and the company agreed to give you an additional

24   four weeks as an accommodation --

1    2009 letter references the FMLA leave that you had

2    taken.

3         A.      Uh-huh.

4         Q.      And that you had exhausted the two

5    weeks of FMLA eligible time, correct?

6         A.      Correct.

7         Q.      And that the company extended that

8    active status for an additional four weeks after

9    expiration of the FMLA period, right?

10        A.      Correct.

11        Q.      And there's a statement which says

12   verbatim, "At the conclusion of the four weeks, if

13   you find that you are still unable to return, we

14   will no longer maintain you as an active employee

15   and will have no resource but to end our employment

16   relationship effective July 11, 2009.  Please note

17   that your file will reflect the status of 'eligible

18   for rehire,' and you are welcome to reapply for any

19   open positions at the time you are released to

20   return to work."

21                Is that accurate?  Is that what the

22   letter says?

23        A.      Yes.  That's what it says.

24        Q.      So at any point before or after this

1    letter, did you provide Factory Card and Party

2    Outlet with any document showing you were released

3    to return to work with or without restrictions?

4         A.    No.

5         Q.    At any time did you attempt to

6    reapply for any position with Factory Card and Party

7    Outlet?

8         A.    No.

9         Q.    When was the last -- before this

10   litigation, when was the last communication, written

11   or otherwise, that you had with anyone at Factory

12   Card and Party Outlet?

13        A.    This litigation is it.

14        Q.    Okay.  So prior to this litigation,

15   was your July 1 telephone conversation with Cheryl

16   Cole and this July 2nd letter, would that represent

17   the last communication you had?

18        A.    I don't recall.

19        Q.    Do you recall any communication

20   between you and Factory Card and Party Outlet

21   between July 2nd and when this litigation was filed,

22   July 2nd, 2009, which was when this letter was sent,

23   and when the litigation was filed?

24        A.    Yes, I believe I talked to them, but

1           IN THE UNITED STATES DISTRICT COURT

            FOR THE CENTRAL DISTRICT OF ILLINOIS

2                SPRINGFIELD DIVISION

3

4  LORA J. WHEATLEY,                )

             Plaintiff,      )

5                         )

            -vs-          ) NO. 11-cv-3414

6                         )

  FACTORY CARD AND PARTY OUTLET,   )

7  a division of AMSCAN HOLDINGS,   )

  INC.,                     )

8           Defendant.      )

9

10

11                 DEPOSITION OF

12                 LORA WHEATLEY

13             SPRINGFIELD, ILLINOIS

14                12/10/2013

15

16

17

18

19

20

21  ATKINSON-BAKER, INC.

  COURT REPORTERS

22  (800)288-3376

23  REPORTED BY:  LAUREL A. PATKES, CSR #084-00134

24  FILE NO. A70B6C5

EXHIBIT

T

1    or couldn't or would have been allowed to or not.

2          A.      Right.  I guess I don't understand

3    what you're asking me.

4          Q.      Well, Aetna, in awarding you

5    long-term disability benefits, apparently believed

6    that you met that test of disability based on

7    documents and information that you provided to them,

8    right?

9          A.      Yeah.

10               MR. BAKER:  Objection to the form of

11    the question.

12               MR. WRIGHT:  You can go ahead and

13    answer.

14               MR. BAKER:  Go ahead.  You can

15    answer.

16          A.      I guess, yes, yes.

17          Q.      Okay.  Let me ask it this way.

18               Do you believe that you met that

19    test; specifically, that you were totally disabled

20    and unable to perform the functions of your job?

21          A.      No, no.

22          Q.      Okay.  Yet you applied for and

23    received long-term disability benefits?

24          A.      Well, because I needed the money

1    because I couldn't go to work because I knew that

2    they wouldn't let me come back with, you know, any

3    type of restrictions.

4         Q.     Okay.  And when you say you needed

5    the money because you couldn't go to work, let's

6    break that down a little bit.

7                Is it accurate to say you couldn't go

8    to work because you weren't released for work?  You

9    had no release from a doctor?

10        A.     Correct.

11        Q.     And your statement that you assumed

12   that you wouldn't be allowed to go back to work is

13   simply an assumption, correct?

14        A.     Well, it's based on a lot of, you

15   know, things I've observed while I was store

16   manager.

17        Q.     In respect to other people in other

18   situations?

19        A.     Assistant managers, store managers,

20   yeah.

21        Q.     But not based on anything related to

22   your specific situation where someone told you --

23        A.     No.  They didn't tell me that till

24   the very end, no.