E-FILED
Tuesday, 30 September, 2014 11:03:07 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LORA J. WHEATLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 11-3414 |
| | ) | |
| FACTORY CARD AND PARTY OUTLET, a division of AMSCAN HOLDINGS, INC., | ) ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Factory Card & Party Outlet's Motion for Summary Judgment (d/e 23) against its former employee, now the Plaintiff in this case, Lora Wheatley. The motion is DENIED. The Court finds that there are genuine questions of material fact concerning whether Wheatley was a qualified individual with a disability under the Americans with Disabilities Act on the date of her termination, and concludes that Wheatley was not estopped from bringing her claim.

# I. FACTUAL BACKGROUND

For nearly 12 years, Plaintiff Lora Wheatley worked for Defendant Factory Card and Party Outlet ("FCPO") in Springfield, Illinois. Motion for Summary Judgment ("Mot."), d/e 23 at 3. After starting as a store supervisor at the party-goods chain in 1996, Wheatley was later promoted to store manager. Id. On July 11, 2009, FCPO terminated Wheatley for not coming to work. The reason that Wheatley did not come to work on July 11 and that FCPO subsequently terminated her are now the subject of this lawsuit. Id. at 4. Alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., Wheatley contends that FCPO failed to accommodate her disability and discriminated against her because of her disability. See Complaint, d/e 1 ¶ 1. FCPO denies these allegations, and now moves for summary judgment. See Answer to Complaint, d/e 6; Mot., d/e 23.

In November 2008, Wheatley was a store manager at FCPO's Springfield, Illinois location when a family medical incident took her away from work for 19 days. See Mot., Ex. Q, d/e 23-1 at 51. Wheatley sought and was given 19 days of leave under FCPO's Family and Medical Leave Act (FMLA) policy, which provides

employees with 12 weeks of paid leave in a rolling twelve-month period.  See id.  Wheatley returned to work after the 19 days expired, using 2.7 weeks out of her 12 weeks of FMLA leave.

In March 2009, Wheatley injured her foot and submitted a note to FCPO from her primary care physician, Dr. James A. Bohan, stating that she could return to work "without restrictions" on March 27, 2009.  Mot., Ex. G, d/e 23-1 at 32.  She returned to work on that date, resuming her duties as store manager.  Mot., Ex. H, d/e 23-1 at 34.  When she went home at the end of her shift, however, she "couldn't walk" and went to see Dr. Bohan again.  Id.  Dr. Bohan wrote another note stating that Wheatley should not work for one week and recommended that she see Dr. Karolyn Senica, an orthopedist.  Mot., Ex. I, d/e 23-1 at 35.

On April 16, 2009, FCPO sent Wheatley a letter asking her to have her physician fill out a "Certification of Healthcare Provider for Employee's Serious Health Condition" and return it to FCPO within 15 days.  Mot., Ex. N, d/e 23-1 at 41.  An FMLA notice accompanying the letter stated that Wheatley had requested leave beginning on April 8, 2014, and that she had 9.3 of her 12 weeks of FMLA leave remaining.  Id. at 42.  FCPO also enclosed materials for

applying for short-term disability benefits through Aetna Insurance. Id. at 41. The record does not indicate whether Wheatley sent FCPO the physician certification, but clearly Wheatley began using her remaining FMLA leave.

Wheatley then had a number of appointments with two different doctors. She first went to see Dr. Senica, the orthopedist, on April 28, 2009. Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Resp."), Ex. 1, d/e 26-1 at 1. At that time, Dr. Senica told Wheatley that she should remain off work until further notice. Id.; Mot., Ex. J, d/e 23-1 at 36. Wheatley apparently met with Dr. Senica again on June 10, 2009, but the results of that visit are unclear. Resp., Ex. 1, d/e 26-1 at 1; Mot., Ex. K, d/e 23-1 at 37. With Wheatley's FMLA leave set to expire on June 13, 2009, FCPO granted Wheatley four additional weeks of leave, lasting until July 11, 2009. Mot., Ex. P, d/e 23-1 at 48-49. During this four-week extension, Wheatley sought a second opinion about her foot from Dr. Jeffrey Fleischli, a podiatrist, on June 17, 2009. Resp., Ex. 1, d/e 26-1 at 2. The record does not contain the results of that initial visit with Dr. Fleischli, but the record does show that Wheatley returned to Dr. Senica on June 22,

2009, and that Dr. Senica wrote Wheatley a note stating that she could return to work on July 6, 2009 "with no restrictions." Mot., Ex. L, d/e 23-1 at 38.

On July 1, 2009, Wheatley again met with Dr. Fleischli. Mot., Ex. S, d/e 23-1 at 59. In an Aetna Attending Physician Statement dated July 8, 2009, which appears to have been based on the results of Wheatley's June 17 and July 1 visits, Dr. Fleischli checked a box indicating that Wheatley had "No ability to work. Severe limitation of functional capacity; incapable of minimal activity." Mot., Ex. M, d/e 23-1 at 39-40. Under another section of the form titled "What medical restrictions/limitations are you placing on patient?," Dr. Fleischli wrote "[i]mmobilization." Id. at 40. Dr. Fleischli noted on the form that Plaintiff would "need to be absent from work due to a disability beginning on July 1, 2009 and ending on August 15, 2009." Id. at 39. The form also indicated that Dr. Fleischli "prescribed [this] restriction on work activities" on July 1, 2009, that the "restrictions/limitations" would be in effect for six weeks, and that Dr. Fleischli estimated that Wheatley would return to work on August 15, 2009. Id. at 40. Lastly, in response

to the question on the form "is your patient motivated to return to work?," Dr. Fleischli wrote "yes." Id. at 40.

In an affidavit that Wheatley submitted in support of her response to FCPO's motion for summary judgment, Wheatley claims that during her July 1 visit with Dr. Fleischli, she asked him if she could return to work before her FMLA leave expired on July 11 because she did not want to lose her job. Resp., Ex. 1, d/e 26-1 at 2. According to Wheatley, Dr. Fleischli told her that she could return to work if her foot was immobilized in a boot. Id. After this visit, Wheatley called FCPO's Regional Resources Manager, Cheryl Cole. Id. The parties agree that during this conversation, Cole told Wheatley that her four-week extension would expire on July 11, 2009. See Mot., Ex. Q, d/e 23-1 at 50. Wheatley contends that she then informed Cole that Dr. Fleischli had told her that she would need to be off work for another two weeks, and Cole told her that she would be terminated if she could not return by July 11. Resp., Ex. 1, d/e 26-1 at 2. Wheatley claims that she then called her immediate supervisor, Foster Bliss, and told him that she would be able to return to work wearing a walking boot in two weeks, but

that Bliss expressed doubt that such an accommodation would be allowed. Resp., Ex. 1, d/e 26-1 at 2.

On July 2, 2009, Cole sent Wheatley a "follow up" letter to their July 1 conversation. Mot., Ex. Q, d/e 23-1 at 50. In the letter, Cole reaffirmed her warning to Wheatley that if Wheatley could not return to work at the end of the four-week extension—on July 11, 2009—she would be terminated, though eligible for rehire. Reply to Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Reply"), Ex. A, d/e 27-1 at 1. This letter was accompanied by a Fitness for Duty Certification to be signed by a physician. Id. at 2. On the certification form is a handwritten note that says "Lora, Please have Dr. complete these forms for return to work. Thank you!" Id. The form has blank spaces for the physician to fill in that include the date the employee may return to work and whether the employee will have any work restrictions. If the physician notes that the associate will need restrictions, the physician is asked to "explain restrictions as they relate to time and duties." Id.

Wheatley received Cole's letter on July 6, 2009. Resp., Ex. 1, d/e 26-1 at 2. Wheatley claims that after receiving the letter, she

called an organization called Great Lakes ADA Center, and a representative named Peter advised her that she should ask FCPO if she could have a further extension of her leave or return to work with a walking boot. Id. at 3. The next day, July 7, Wheatley called Cole and informed her that Dr. Fleischli had told Wheatley that she could return to work wearing a walking boot, but that Cole then told her that would not be possible because Wheatley needed to be able to climb on a ladder to do her job. Id. at 4.

Wheatley does not dispute that after talking to Cole, she did not return the certification form or provide any other written documentation to support her claim that she was released to work in July of 2009. See Mot., Ex. R, d/e 23-1 at 56. Rather, she claims that Cole made it clear that FCPO would not allow her to return to work with a walking boot, so she felt it would be pointless to return written documentation from Dr. Fleischli, who had advised her that she would need to wear the boot to go to work. Resp., Ex. 1, d/e 26-1 at 5. Since Wheatley felt that FCPO would not allow her to return to work with the boot, she contacted Dr. Fleischli on July 8, 2009 and asked him to prepare the Aetna

Attending Physician Statement discussed above so that she could apply for disability benefits. Id.

On August 8, 2009, Aetna sent Wheatley a letter regarding her application for long-term disability benefits. Mot., Ex. D, d/e 23-1 at 24-25. The letter stated that Aetna concluded that Wheatley was "unable to perform the material duties of [her] own occupation" and found her "totally disabled from [her] own occupation." Id. at 24. Aetna stated it would issue Wheatley an initial benefit payment for the "period July 7, 2009 through July 31, 2009," and that the benefits would last for 24 months from July 7, 2009. Id. Although the letter references Wheatley's application to the insurance company for long-term benefits, Wheatley's actual application is not part of the record.

On November 10, 2011, Wheatley filed this lawsuit against FCPO, claiming that FCPO failed to accommodate her disability and discriminated against her on the basis of her disability. See Complaint, d/e 1. At the request of the parties, the Court reopened the discovery deadline to allow FCPO to depose Wheatley. After the deposition, the Court granted FCPO's request to file a motion for summary judgment, which is now before the Court.

## II. LEGAL STANDARD

Summary judgment is proper if the movant—here, FCPO—shows that there are no genuine issues of material fact and that it is consequently entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). FCPO bears the initial burden of identifying the evidence that demonstrates the absence of genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). No genuine issues of material fact exist if no reasonable jury could find in favor of Wheatley, the nonmoving party. See Brewer v. Bd. of Trs. of the Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007). When ruling on FCPO's Motion for Summary Judgment, this Court must consider the facts in the light most favorable to Wheatley as the nonmoving party, and draw all reasonable inferences in Wheatley's favor. See Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).

## III. ANALYSIS

FCPO moves for summary judgment against Wheatley on two grounds—first, that Wheatley was not released to return to work on the date of her termination, and was, therefore, not a qualified individual with a disability when she was terminated; and second, that she was judicially estopped from bringing her claim because

she received disability benefits for the period including and following the date of her termination.  See Mot., d/e 23 at 1-2.

### A. A Genuine Issue of Material Fact Exists as to Whether Wheatley Could Work with a Reasonable Accommodation on the Date of Her Termination.

Wheatley brings her claim under the ADA, alleging that FCPO failed to provide her with a reasonable accommodation and discriminated against her because of her disability.  The ADA's protections against discrimination apply only to a "qualified individual" with a disability.  42 U.S.C. § 12112(a).  Therefore, before analyzing whether Wheatley can show that FCPO failed to accommodate her disability, she must show that she was a "qualified individual" under the ADA.

A qualified individual with a disability is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); see, e.g., Bultemeyer v. Fort Wayne Cmty. Sch., 100 F.3d 1281, 1284 (7th Cir. 1996).  To determine whether an individual is "qualified," the Court first analyzes whether the person satisfied the prerequisites of the position, such as educational background, experience, and skills.  See Bombard v.

Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir.1996) (quoting 29 C.F.R. § 1630.2(m)). Those qualifications of Wheatley are not contested here, so the Court will focus on the second inquiry: whether Wheatley could perform the essential functions of her position, with or without a reasonable accommodation, when she was terminated on July 11, 2009. See id.

FCPO argues that Wheatley was not a qualified individual because she was not "released" to work on either July 7, 2009, the date of her alleged request for an accommodation, or July 11, 2009, the date of her termination. FCPO contends that without a release from a doctor, Wheatley could not perform an essential function of her job—showing up for work—and therefore, she was not a qualified individual. FCPO relies on the Attending Physician Statement completed by Dr. Fleischli on July 8, 2009 stating that Wheatley was unable to work until August 15, 2009, and on Wheatley's deposition testimony in which she stated that she was not released by a doctor to work on July 11, 2009. Mot., Ex. M, d/e 23-1 at 39; Mot., Ex. P, d/e 23-1 at 48.

In her response, Wheatley vehemently disagrees and contends that she was released to work on July 11, 2009, because on July 1,

2009, Dr. Fleischli told her she could work if she wore a boot that immobilized her foot. In Wheatley's affidavit supporting her response, she recounts her conversation with Dr. Fleischli regarding the boot, as well as her later phone calls to Cheryl Cole and Foster Bliss in which she told them she could return to work wearing a boot and they rejected this proposed accommodation. See Resp., Ex. I, d/e 26-1 at 1-4.

FCPO objects that Wheatley's affidavit constitutes "self-serving hearsay." Reply, d/e 27 at 6. The Court notes that the Seventh Circuit has recently clarified that the fact that an affidavit is "self-serving" should not be used to "denigrate" it as a source of evidence, since "[d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." Hill v. Tangherlini, 724 F.3d 965, 967 (7th Cir. 2013). Still, it is true that Dr. Fleischli's statement would not be admissible "to prove the truth of the matter asserted in the statement"—that is, to *prove* that Wheatley could work with a boot. See FED. R. EVID. 801. But Wheatley does not carry that burden at this stage, and she is not attempting to use the statement for that purpose. Rather, she is using the statement as background

information to explain why she told Cole and Bliss that she would be able to return to work with a walking boot. The statement, therefore, falls under the hearsay exception for showing the effect a statement has upon a listener. See United States v. Hanson, 994 F.2d 403, 406-07 (7th Cir.1993) ("An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay.").

The Court concludes that Wheatley's belief that she could return to work with a walking boot, along with Dr. Senica's release of Wheatley to return to work on July 6, 2009, see Mot., Ex. L, d/e 23-1 at 38, and Dr. Bohan's earlier release, see Mot., Ex. G, d/e 23-1 at 32, create a genuine issue of material fact as to whether Wheatley was capable of working on July 11. According to Wheatley, the Attending Physician Statement that Dr. Fleischli prepared that called for Wheatley's "immobilization" was written after Wheatley told Dr. Fleischli that FCPO had rejected her proposed accommodation, and thus does not constitute conclusive proof that she could not have worked with a boot on July 11. See Resp., Ex. 1, d/e 26-1 at 5. Further, what Dr. Fleischli meant by immobilization is not clear, but he most likely meant the

immobilization of Wheatley's foot with a walking boot. Moreover, while FCPO makes much of Wheatley's deposition testimony regarding whether she had been "released to work," the excerpted testimony does not establish that Wheatley would not have been able to return to work with a walking boot. Rather, Wheatley appears to have meant that she had never gotten a written work release from Dr. Fleischli, but she later explained that she did not think there was a reason to get such a release because Cole and Bliss had told her that she would not be allowed to return to work wearing a boot. See Reply, Ex. D, d/e 27-4 at 8-9; Resp., Ex. 1, d/e 26-1 at 5.

For those reasons, the record remains unclear on whether Wheatley could have returned to work with a walking boot on July 11. If Wheatley was in fact capable of working with a boot, then FCPO must show that allowing her to return to work with a boot would not have been a reasonable accommodation, since Cole and Bliss both told Wheatley that she would not be allowed to come back to work with a boot.[1] There are consequently a number of

---

[1] The Court notes that Cole and Bliss's statements in Wheatley's affidavit constitute admissible nonhearsay under Federal Rule of Evidence 801(d)(2)(D).

outstanding issues of material fact that preclude summary judgment against Wheatley's claim.

## B. Wheatley Is Not Estopped from Pursuing Her ADA Claim.

FCPO also argues that Wheatley is judicially estopped from pursuing her ADA claim because she represented to Aetna that she was unable to perform the "material duties" of her employment when she sought long-term disability benefits. Judicial estoppel is an equitable doctrine that generally prohibits a party who prevails on one ground in a lawsuit from contradicting that ground in another suit. See Opsteen v. Keller Structures, Inc., 408 F.3d 390, 392 (7th Cir. 2005) ("Litigants who take one view of the facts, and prevail, are equitably estopped to assert the opposite later."). According to FCPO, Wheatley's representations to Aetna that she was unable to work directly contradict her claim under the ADA that she could perform the essential duties of her job. This, FCPO contends, means she is estopped from suing under the ADA.

It is true that because Wheatley bears the burden of showing she "can perform the essential functions of her job," a representation to Aetna that she cannot perform the "material

duties" of her job would appear to contradict an essential element of her ADA claim. See, e.g., Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (finding that "a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case"). However, in Cleveland, the Supreme Court found that because of the differences between the ADA and the Social Security Act, which does not consider the possibility of reasonable accommodations, a "[Social Security Disability Insurance] claim and an ADA claim can comfortably exist side by side." Id. at 802-03. The Court therefore refused to impose a "special negative presumption" that a person who receives Social Security Disability Insurance benefits is estopped from pursuing an ADA claim, and instead required the plaintiff to "offer a sufficient explanation" for the apparent contradiction between the two claims. Id. at 802-03, 805-06. The Court held that an explanation can survive summary judgment if it is "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless

'perform the essential functions' of her job, with or without 'reasonable accommodation.'" Id. at 807.

Following Cleveland, the Seventh Circuit in Lee v. City of Salem, Ind., 259 F.3d 667, 671 (7th Cir. 2001), found that an employee who stated that he "had no other thing to do" but apply for disability benefits after his employer kept "hammering [him] and saying [he was] disabled" had not sufficiently explained the contradiction between his ADA claim and his application for disability benefits. The court emphasized that

> Lee does not account for his previous statements by explaining, for example, that the SSA does not consider the possibility of reasonable accommodations, so that when he claimed he was unable to return to his job with the city, he was simply saying that he could no longer do that job unless the city accommodated him, which it refused to do.

Id. at 676.

Unlike the plaintiff in Lee, Wheatley does argue that she could have continued to do her job if FCPO had accommodated her disability, which it refused to do. To receive disability benefits from Aetna, Wheatley had to certify that she could not perform the "Material Duties" of her job, which were defined as those duties that "are normally required for the performance of [her] own occupation"

and "cannot be reasonably omitted or modified." Mot., Ex. C, d/e 23-1 at 5. Based on FCPO's alleged rejection of Wheatley's proposed accommodation, Wheatley thought that FCPO considered climbing on a ladder to be a material duty that could not be omitted or modified. Resp., Ex. 1, d/e 26-1 at 5. But she still could have believed that if FCPO *did* allow her the accommodation of wearing a boot and not climbing a ladder, she could have worked. For that reason, the Court finds that a reasonable juror could conclude that Wheatley could have worked with an accommodation, but believed she could not complete the "material duties" of her job based on FCPO's rejection of her proposed accommodation. Wheatley was, therefore, not judicially estopped from bringing her ADA claim.

### IV. CONCLUSION

The Court concludes that a genuine question of material fact exists about whether Wheatley was able to work on July 11, 2009 with a walking boot, and that she was not estopped from bringing her disability claim. Therefore, FCPO's Motion for Summary Judgment (d/e 23) is DENIED.

ENTERED: September 30, 2014

s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE